Richard R. HEATH, Director, Department of
Finance and Administration *v.* MIDCO
EQUIPMENT Company

73-211                                   505 S.W. 2d 739

Opinion delivered February 19, 1974

*Karl D. Glass, John F. Gautney, Dewey Moore Jr., A. W. Nisbet,* and *J. R. Nash,* for appellant.

*Owens, McHaney & McHaney,* by: *John C. Calhoun Jr.,* for appellee.

LYLE BROWN, Justice. The issue before us is whether three rear dump trucks sold by appellee to Big Rock Stone & Material Co. are subject to our sales tax act. The chancellor enjoined the imposition of the tax, finding that the trucks were used directly in the manufacturing process of the purchaser. Appellant contends that the trucks are not so used and that in fact they are transportation equipment which is not included in the exemption provisions.

Big Rock is engaged in the extraction and processing of stone from a quarry site in Little Rock. The stone is blasted

from the face to the floor of the quarry and loaded by crane into these rear dump trucks. The loaded trucks are driven around a ridge a distance of three-quarters of a mile to the primary crusher. At all times the trucks travel on the private property of Big Rock. The load of rock is dumped into the primary crusher and the truck returns for another load.

From the primary crusher the stone is conveyed along a vibrating chute which screens out all stone less than four inches in size. These small pieces, consisting of one percent of the quarry sales, find their way to bins from which they are sold as "four-inch base". The larger pieces go to a secondary crusher. From there the material is transferred by overhead conveyors and stock piled. It then is passed through a third crusher, through a transfer point, and then to the finishing mill where it is washed and screened to size. The finishing mill produces some seven different stone products. Some of the stone is loaded into railroad cars under the mill and some is loaded into trucks from a chute under the mill.

The applicable exemption provisions are found in Ark. Stat. Ann. § 84-1904 (r) (Supp. 1971):

(2) Gross receipts or gross proceeds derived from the sale of tangible personal property consisting of machinery and equipment used directly in producing, manufacturing, fabricating, assembling, processing, finishing, or packaging of articles of commerce at manufacturing or processing plants or facilities in the State of Arkansas, but only to the extent that such machinery and equipment is purchased and used for the purposes set forth in this subsection.

(C) It is the intent of this subsection to exempt only such machinery and equipment as shall be utilized directly in the actual manufacturing or processing operation at any time from the initial stage where actual manufacturing or processing begins through the completion of the finished article of commerce and the packaging of the finished end product. The term "directly" as used in this Act is to limit the exemption to only the machinery and equipment used in actual production during processing, fabricating or assembl-

ing raw materials or semi-finished materials into the form in which such personal property is to be sold in the commercial market. Hand tools, buildings, transportation equipment, office machines and equipment, machinery and equipment used in administrative, accounting, sales or other such activities of the business involved and all other machinery and equipment not directly used in the manufacturing or processing operation are not included or classified as exempt.

(E) For the purposes of this subsection, the terms "manufacturing" and/or "processing", as used herein, refer to and include those operations commonly understood within their ordinary meaning and shall also include mining, quarrying, refining, extracting oil and gas, cotton ginning, and the drying of rice, soy beans and other grains.

The taxpayer carries a rather heavy burden to establish a right to the claimed exemption. "As stated, this court has consistently held that the burden is on the taxpayer to establish clearly that the legislature intended the claimed exemption since taxation is the rule and exemption is the exception. An exemption cannot be implied." *Cheney, Comm'r. v. Georgia-Pacific Corp.*, 237 Ark. 161, 371 S.W. 2d 843 (1963). In *Wiseman v. Madison Cadillac Co.*, 191 Ark. 1021, 88 S.W. 2d 1007 (1935) we said the burden is on the claimant "to establish clearly his right to exemption". In *Peterson Produce Co. v. Cheney, Comm'r.*, 237 Ark. 600, 374 S.W. 2d 809 (1964) we said: "Let it also be remembered that a tax exemption must be strictly construed, 'and to doubt is to deny exemption' ". Most of the recited principles were reiterated in *Hervey, Comm'r. v. Tyson's Foods, Inc.*, 252 Ark. 703, 480 S.W. 2d 592 (1972).

We have no Arkansas case in which trucks carrying materials from the blasting area to the first crusher operation have been claimed as an exemption. The nearest case in point is *Cheney, Comm'r. v. Georgia-Pacific, supra*. There it was held that a towmotor and carrier used to transport materials between processes in the plant were not exempt. We said the item was removed from exemption by the last paragraph of Ark. Stat. Ann. § 84-3106 (Supp. 1961). That provision as

amended is now included in Ark. Stat. Ann. § 84-1904 (r) (2) (C) (Supp. 1971), the last sentence of which is very similar to the repealed section above cited and reads: "Hand tools, buildings, transportation equipment, office machines and equipment, machinery and equipment used in administrative, accounting, sales or other such activities of the business involved and all other machinery and equipment not directly used in the manufacturing or processing operation are not included or classified as exempt".

Appellant and appellee cite several cases from other jurisdictions which are persuasive but far from conclusive. In the first place, we are unable to find where any of those jurisdictions have statutes identical with ours. In the second place, we have not one, but three sections, of the statutes which must be harmonized to find the legislative intent. In the third place, the cited cases do not tell us whether those jurisdictions follow our rules of evidence governing the burden of proof, strict construction, and resolution of doubt, all of which have heretofore been recited in this opinion.

The cited sections of the applicable law emphasize that to be exempt the machinery must be used *directly* in the manufacturing process. Section 84-1904 (r) (2) (C) tells us that to be exempt the machinery must be used directly in manufacturing and must be utilized "from the initial stage where actual manufacturing or processing begins..." The same section excludes transportation equipment from exemption. Section 84-1904 (r) (2) (E) says the terms "manufacturing" and "processing" shall include those operations commonly understood to be such within their ordinary meaning.

We hold that the recited statutes, considered in their entirety, leave substantial doubt that the trucks are exempt from the tax.

Reversed and remanded with directions to enter judgment consistent with our conclusion.

HARRIS, C.J., and FOGLEMAN, J., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. I consider the dump trucks in this case to clearly fall within the exemption. They are certainly machinery or equipment used directly in producing, assembling or finishing articles of commerce at a manufacturing or processing plant or facility. This would bring them within the purview of Ark. Stat. Ann. § 84-1904 (r) (2) (Supp. 1073), unless excluded by the clause "but only to the extent that such machinery is purchased and used for the purposes set forth in this subsection." The only other applicable portion of the subsection is Ark. Stat. Ann. § 84-1904 (r) (2) (C). Under that subsection, in order to be exempt the machinery or equipment must be used directly in the actual manufacturing or processing operation between the initial stage through the completion of the finished article of commerce and the packaging of the end product. But the use of the term "directly" is intended only to limit the exemption to the machinery and equipment used in actual production during processing, fabricating or assembling raw materials or semi-finished material into the form in which personal property is to be sold in the commercial market. "Actual production" as used in the act seems to me to include every activity from the time the raw stone is blasted from the walls of the quarry until it has been crushed and screened to obtain a salable product.

In the sense used in the act, production is defined as: "[a]ct or process of producing, bringing forth or exhibiting to view; as, the production of commodities, of a witness, or of a play" (Webster's New International Dictionary, Second Edition); "the act or process of producing, bringing forth or making" "the creation of utility: the making of goods available for human wants" (Webster's Third Edition).

Even though our lien statutes are strictly construed when determining whether a lien is created, it has been held that a laborer who cuts and rakes prairie hay, a natural product, was entitled to a lien because the cut and dried hay was "the production of the laborer who cuts and rakes it . . ." *Emerson* v. *Hedrick*, 42 Ark. 263. The night engineer of an ice plant, who operated machinery, handled the compressor, froze ice, "pulled it" and put it in the "dump room," was held to be engaged in the production of ice. *Couch* v. *Ward*, 205 Ark. 308, 168 S.W. 2d 822.

The accepted definition of the word "actual" is "[i]n-volving, pertaining to, or manifested in acts or actions; active" and is opposed to potential, possible, ostensible, virtual, speculative, conceivable, ideal, theoretical, hypothetical or nominal. (Webster's Second Edition.) We have taken the word to mean "in fact." *Crossett Lumber Co.* v. *Johnson,* 208 Ark. 572, 187 S.W. 2d 161; *Life & Casualty Ins. Co. of Tennessee* v. *DeArman,* 192 Ark. 11, 90 S.W. 2d 206.

If a laborer raking hay is engaged in production of hay, certainly these dump trucks are engaged in real and active production of the marketable stone. These dump trucks are motorized, wheeled and self-propelled conveyor belts, nothing more. If they are not exempt under this clause, neither is the conveyor belt which transports the stone to the "surg pile," to the tertiary crusher, or to the finishing mill. Appellant argues that to be exempt "the machinery must be used directly in the extraction of the stone from the earth." If this is so, how can the crushers be exempt? But the state not only does not contend that either the conveyor belts or crushers were not exempt, it seems to admit that they were. I submit that this construction, and that of the majority, passes beyond a strict one and becomes, if it is even a possible one, a very narrow one.

It must be remembered that this statute is considerably different, and the facts considerably differ, from those considered in *Cheney* v. *Georgia-Pacific,* 237 Ark. 161, 371 S.W. 2d 843. The exemption there considered did not apply to certain items, equipment and materials "which are incidental or useful in connection with the manufacturing or processing operations and not directly used in the primary production processing or manufacturing." The conveyors there held not exempt transported waste materials from a storage bin at a lumber mill into a mechanism which fed a pneumatic conveyor, which, in turn, blew the waste material over to a paper mill, where it was used as a fuel for boilers. The towmotor and carrier held subject to tax transported material between processes in the plant. The key words in the statute then before the court were "incidental or useful" and "primary." Certainly the particular items were incidental and useful in connection with the production but not directly used in the *primary* production. The words actual and primary are far

from synonymous. "Primary" means "[f]irst in order of time or development or in intention; primitive; fundamental; original; initial; . . . [f]irst in dignity or importance; chief; principal; as, *primary* effects, meanings; . . . [o]f the first order in successive divisions, combinations or ramifications; as, primary nerves, compounds . . ." (Webster's Second Edition). In *Cheney*, a machine was held to be a primary facility when its removal would cause the manufacturing operation to cease.

Thus, a machine could be incidental or useful to primary, but not secondary, production and still be utilized in actual production, whether primary or secondary. I submit that the General Assembly is presumed to have adopted the language in the 1968 statute now before the court with complete awareness of our 1963 decision construing the earlier act, and that it clearly intended the current exemption to be construed differently from that given by us in *Cheney*.

I am well aware of, and subscribe to, the rule of construction that doubts are to be resolved against exemption from a tax, but, to my way of thinking, the majority has imported a doubt into the construction of the statute in order to hold as it has by removing the doubt. This we must not do. Rules of construction cannot be used to import ambiguity into a statute where none exists. 82 C.J.S. 527, Statutes, § 311; *Inwall* v. *Transpacific Lumber Co.*, 165 Ore. 560, 108 P. 2d 522 (1941); *New England Die Co.* v. *General Products Co.*, 92 R.I. 292, 168 A. 2d 150 (1961).

I agree with the Chancellor, and would affirm the chancery decree.

I am authorized to state that the Chief Justice joins in this dissent.