Richard R. HEATH, Director, Department of Finance And Administration, State of Arkansas *v.* RESEARCH-COTTRELL, INC.

75-104                              529 S.W. 2d 336

Opinion delivered November 3, 1975
[Rehearing denied December 8, 1975.]

*Karl Glass, Robert Brockman, James Cooper, H. Ray Hodnett, James Eads, Walter Skelton,* for appellant.

*Wright, Lindsey & Jennings,* for appellee.

ELSIJANE T. ROY, Justice. Appellee, Research-Cottrell, Inc., under a subcontract agreement with the Bechtel Corporation, contractor for the Arkansas Nuclear 1 Unit of Arkansas Power & Light Company located in Russellville, Arkansas, was engaged to design, furnish and install a natural draft cooling tower for Arkansas Power & Light Company at the nuclear generating power station. After an audit, appellant served appellee with a notice of tax assessment which was upheld in an administrative hearing. Appellee brought a petition for declaratory judgment in the Chancery Court of Pope County, Arkansas. After trial the court entered judgment for the appellee declaring the notices of assessment to have been wrongfully issued, and that appellee was entitled to a use tax exemption.

Appellee first alleged that an exemption is applicable under Ark. Stat. Ann. § 84-3106 (D)(2)(d), which statute gives an exemption for machinery and equipment required by state law or regulations to be installed and utilized by manufacturing facilities to prevent or reduce air and/or water pollution. It was under this theory that the court found for appellee. The other theory advanced by appellee is that a specific exemption applies under Ark. Stat. Ann. § 84-3106 (D)(2), and that the cooling tower constructed was machinery and equipment used directly in manufacturing.

The appellant contends that there is no exemption under either theory, and that under Ark. Stat. Ann. § 84-3129 and § 84-3130 appellee is a contractor and therefore a consumer of the items purchased, and consequently responsible for paying the use tax on such purchases. The appellant also contends that since appellee is a contractor, that any exemption which could possibly be applied to Arkansas Power & Light Company would not be imputed to the contractor. The appellant's last contention is that certain exemptions were granted by the legislature to utilities by Act 439 of 1969, which was later modified by Act 222 of 1971, presently

codified as Ark. Stat. Ann. § 84-3105.1 (H). The net effect of appellant's last contention is that utilities are afforded unique exemption status in the use tax laws, and are not characterized as manufacturers but as utilities, and therefore, even if Arkansas Power & Light Company had an exemption, it would not be under the manufacturing exemption of Ark. Stat. Ann. § 84-3106 (D)(2), but would be limited to Ark. Stat. Ann. § 84-3105.1(H).

Appellant brings this appeal from the adverse decision of the Pope County Chancery Court.

For reversal appellant contends the chancellor erred in finding that appellee Research-Cottrell, Inc., a contractor, is entitled to the benefits of the use tax exemption found in Ark. Stat. Ann. § 84-3106 (D)(2)(d).

Under appellee's first contention we find the issue to be whether appellee Research-Cottrell, in performing its contract with Bechtel Corporation (the general contractor) to install a cooling tower at the nuclear generating facility of Arkansas Power & Light Company, is entitled to the exemptions to the use tax found in the above cited statute.

Under well established law, appellee, Research-Cottrell, Inc., has the burden of clearly proving any right to an exemption. *C.J.C. Corporation v. Cheney, Commissioner*, 239 Ark. 541, 390 S.W. 2d 437 (1965).

The basic use tax exemptions were enacted in Act 487 of the 1949 Acts of Arkansas, (Ark. Stat. Ann. § 84-3106). These basic use tax exemptions have been amended several times, including Act 5 of the 1968 Acts of Arkansas (First Ex. Sess.) which is now codified as Ark. Stat. Ann. § 84-3106 (D)(2)(d) (1973 Cum. Supp.). The exact language of the statute is as follows:

"There are hereby specifically exempted from the taxes levied in this Act:

"(D)(2)(d) Machinery and equipment required by State law or regulations to be installed and utilized by

manufacturing or processing plants or facilities in this State to prevent or reduce air and/or water pollution or contamination which might otherwise result from the operation of such plant or facility."

This part of the statute was passed because the legislature recognized the increased anxiety of concerned citizens about damage to the environment caused by the disposal of industrial waste and thermal discharge. About the same time federal and state governments began pollution abatement efforts which took several forms. One method was to grant subsidies in the form of tax incentives. By the end of 1969 a number of states had amended their tax laws to offer one or another form of incentive as a mode of approach to the pollution problem.

Arkansas passed the cited exemption to the use tax laws in an effort to encourage industries to make substantial capital investments in order to prevent and reduce air and water pollution and to protect the overall environment. This was clearly the purpose of the tax exemption.

Appellee, to qualify for the pollution use tax exemption, must fit precisely within the statutory definition.

Appellant takes the position that a cooling tower is not machinery and equipment but is only "a massive cement structure." Such a characterization of the cooling tower does not preclude its being machinery or equipment.

Appellant also draws a comparison between the cooling structure at issue and a chimney, asserting that an ordinary person would share appellant's reluctance to characterize this tower as a machine. Appellee, on the other hand, has made available the testimony of the mechanical engineer who was responsible for the design and construction of the cooling tower and who found no difficulty in denominating this tower a machine. He stated that natural draft cooling towers are evaporative cooling machines, and probably the largest pollution control mechanisms in use today. In this instance, the cooling machine serves to prevent the hot water, which is a necessary by-product to electrical generation, from damaging

the waterways (in this instance Dardanelle Reservoir). The testimony was that fish and plant life would be significantly damaged in the Reservoir without the operation of the cooling tower.

The testimony of one of appellee's engineers on this issue follows:

Q. Could you briefly for us, in your own words, just describe what is an evaporative cooling tower?

A. An evaporative cooling tower is really quite a simple machine that uses the laws of nature to do its work for it. It consists of a device which raises water to some elevation, allows it to fall back to the ground thereby engaging with air which is moving in the other direction and allowing the transfer of energy from the water to the air and heat in the form of energy is being transferred.

* * *

Q. All right, would you describe this cooling tower as a pollution control device, Mr. Haggerty?

A. Yes, it certainly is. Its function is to prevent the discharge of the very high quantities of heat into the local body of water, which would result in thermal pollution of that body of water. So its use, therefore, is a pollution control device designed to prevent thermal pollution.

Q. Also would you describe the cooling tower, not only as a pollution control device, but as a machine as you understand the word?

A. Yes, it's a machine in that it is probably the largest single system cooling device of its kind. Largest type of machine ever made in fact.

In *Blankenship* v. *W. E. Cox & Sons*, 204 Ark. 427, 162 S.W. 2d 918 (1942), we relied upon the *Webster International Dictionary* definition of the word "machine" as being "any device consisting of two or more resistant, relatively con-

strained parts, which, by a certain pre-determined intermotion, may serve to transmit and modify force and motion so as to produce some given effect or to do some desired kind of work . . ." We additionally pointed out that "a crowbar abutting against a fulcrum" and "a pair of pliers in use" would fall within any "strict definition" of the word "machine." Later in *Ben Pearson, Inc.* v. *The John Rust Co.*, 223 Ark. 697, 168 S.W. 2d 893 (1954), we incorporated the definition found in *Blankenship*, supra, and added an extract from *Corning* v. *Burden*, 56 U.S. (15 How.) 252, 14 L. Ed. 683, to the effect that "the term machine includes every mechanical device or *combination of mechanical powers and devices to perform some function and produce a certain effect or result.*" (Emphasis supplied.) In the case at bar, even though the principle involved in recirculating the water for cooling purposes lacks the complexity customarily associated with a machine, there is still present the dynamics of elevating (by mechanical pumps) the heated water some 447 feet and the subsequent interaction of this heated water with asbestos baffles to aid in dissipating the heat as the water descends. This interaction comports with the *Blankenship* and *Ben Pearson,* supra, definitions of a machine in that the internal components of the cooling tower comprise "two or more resistant, relatively constrained parts" which "produce some given effect or do some desired kind of work."

The second part of the pollution control use tax exemption which appellee must come within is that the natural draft cooling tower must be required by state law or regulations to be installed to prevent or reduce air and/or water pollution which might otherwise result from the operation of such plant or facility.

Appellee's Exhibit No. 22 was the permit issued by the Arkansas Pollution Control Commission to Arkansas Power & Light Company. This permit is required by Ark. Stat. Ann. § 82-1908 (2). The statute states that it is unlawful for any person to discharge any effluent into the waters of the state without having first applied for and obtained a disposal permit from the Commission.

Appellee's Exhibit No. 23 is a letter from the attorney for

the State Department of Pollution Control and Ecology. The letter states *inter alia:*

> "In summary, there is no question that the cooling tower was a required pollution control system under the Arkansas Water and Air Pollution Control Act Regulation No. 2, and the terms of the Commission permit. Absent the cooling tower, thermal pollution of the Dardanelle Basin would inevitably result from the combined discharges of cooling water by the two nuclear units."

No oral testimony nor documentary evidence was offered by the Department of Finance and Administration to controvert the fact that the cooling tower was required by state law.

During the trial Mr. Dennis Haggerty, engineer of appellee, testified that the Arkansas Power & Light Station at Russellville is really an energy processing plant. He explained how the manufacture of electricity can be traced just as one can trace the output of a plant that manufactures steel or processes food. Like any other manufacturing facility, a power processing plant converts raw materials into a salable product.

In addition to the testimony which indicated that the power plant does manufacture electricity, there is also Arkansas judicial authority for this position. In *Morley, Commissioner of Revenues* v. *Brown and Root, Inc.,* 219 Ark. 82, 239 S.W. 2d 1012 (1951), we held that personal tangible property purchased by contractors engaged in construction of a dam used in part for "manufacturing" of electricity was exempt from the use tax to the extent that property went into the construction of the dam. We specifically characterized the generating of electrical power as a manufacturing process in *Morley,* supra.

Appellant argues that exemptions for utilities are restricted to Ark. Stat. Ann. § 84-3105.1 (H) (Act 439 of 1969 as amended by Act 222 of 1971). We find that Act 222 of 1971 removes many of the use tax exemptions which were formerly granted to public utilities, but said act does not indicate that

it is exclusive and that there could not concurrently exist an exemption for pollution control equipment. For appellant to argue that the pollution control exemption applies only to some types of manufacturers and not to others is not rational for it would be tantamount to saying that the Arkansas legislature is encouraging some industries to control the environmental pollution problem while discouraging other industries from attempting to do so. It is apparent to this Court that Section (D)(2)(d) of Act 5 of 1968 was intended to grant tax incentives for pollution equipment to any industry which has the capability of polluting the air or water in Arkansas.

Appellant contends further that even if the exemption were available to Arkansas Power & Light Company, it is not available to appellee Research-Cottrell as appellee is a contractor and as such must pay the use tax despite exemptions available to owners. Appellant relies upon Act 125 of 1965 Acts of Arkansas (Ark. Stat. Ann. § 84-3129, et seq.) which levied a 3% tax on all tangible personal property purchased by contractors to be used in the performance of contracts within the state. It is important to note that Section 6 of Act 125 of 1965 states:

"The provisions of this Act shall be cumulative to the provisions of Act 487 of 1949 (As Amended)."

Act 487 of 1949 is the basic use tax exemption statute and one of several amendments to it was Act 5 of 1968 previously referred to which included the "pollution" exemption under consideration here. Ark. Stat. Ann. § 84-3106 is Act 487 of 1949 along with the amendments which have been adopted since then. This issue was considered in *Bryan Leary, Comm. of Revenues* v. *Wolfe,* 242 Ark. 715, 416 S.W. 2d 266 (1967). In *Wolfe,* the Arkansas Commissioner of Revenues sought to assess the use tax against an oil and gas drilling contractor headquartered in Oklahoma on machinery and equipment used in Arkansas operations. The specific exemption of the use tax law included manufacturing and processing machinery, materials and supplies used directly in the mining and production of natural resources. The chancellor found that the contractors were entitled to claim the use tax exemption and held for the taxpayer. On appeal, we affirmed, stating:

> "Had the intent been to repeal any provision of the law then existing, the legislature was free to so recite in Act 125."

Thus in *Wolfe* we held that the exemptions afforded the taxpayer by Act 487 of 1969 (the basic use tax exemptions) were not repealed by Act 125 of 1965.

The plain and unambiguous wording of the exemption herein reflects that it was based upon the nature of the transaction and not the identity of the taxpayer. It is not an exemption granted *only* to manufacturers or processors but *machinery and equipment* "installed and utilized by manufacturing or processing plants or facilities in this State" . . . . are specifically exempted from the tax.

To hold the exemption did not apply to contractors would defeat the purpose of the Act which was designed to encourage the construction and installation of anti-pollution machinery and equipment. In very few instances would the manufacturer undertake construction and/or installation of the magnitude involved herein. In the regular course of business the manufacturing plant owner would in all probability contract with a qualified contractor to do the construction work.

Accordingly, we agree with the learned trial court in its holding that:

> "1. The design, furnishing and installation of a natural draft cooling tower by plaintiff under its subcontract with Bechtel Corporation, the general contractor for Arkansas Nuclear 1 of Arkansas Power & Light Company, comes within the specific exemption of Ark. Stats. § 84-3106 (D)(2) of the Arkansas Compensating Use Tax being machinery and equipment required by State law or regulations to be installed and utilized by manufacturing or processing plants or facilities in this State to prevent water pollution or contamination which might otherwise result from the operation of such plant or facility.

"2. Plaintiff, as a contractor, is entitled to the benefits of the specific exemption of Ark. Stats. § 84-3106 (D)(2)(d), and is entitled to relief from the Arkansas Compensating Use Tax in this transaction.

"3. The notice of assessment by defendant against plaintiff was wrongfully issued and the specific exemption from the Arkansas Compensating Use Tax set forth in Ark. Stats. § 84-3106 (D)(2)(d) exempts plaintiff from the Arkansas Compensating Use Tax."

Having found that appellee is entitled to the exemption provided in the pertinent section of the anti-pollution statute we do not reach consideration of its contention that the cooling tower was machinery and equipment used directly in manufacturing.

Judgment of the trial court is affirmed in all respects.

GEORGE ROSE SMITH, FOGLEMAN and JONES, JJ., dissent.

GEORGE ROSE SMITH, Justice, dissenting. I find it little short of astonishing that a majority of this court can describe Nuclear One as a machine, especially when the opinion recognizes that the taxpayer has the burden of clearly showing its right to the exemption ("To doubt is to deny," as we have said), and when the taxpayer is a foreign corporation having little claim to a free ride at the expense of our taxpaying citizens.

Nuclear One is essentially an enormous cooling tower made of steel, concrete, and stone — all immovable components in its construction. True, it houses machinery which lifts the hot water to the top of the tower, so that it can be cooled by falling back to earth by gravity. But the point at issue is not the exemption of the machinery contained within the tower; certainly that is exempt. The question is the right of the tower itself to the exemption, as a machine.

The majority quote the testimony of one of the appellee's employees, who presumably put the matter in the light most favorable to his employer:

An evaporative cooling tower is really quite a simple machine that uses the laws of nature to do its work for it. It consists of a device which raises water to some elevation, allows it to fall back to the ground, thereby engaging with air which is moving in the other direction and allowing the transfer of energy from the water to the air, and heat in the form of energy is being transferred.

According to that definition of a machine, there are many machines that have not been recognized as such, with an attendant tax exemption. In a concrete rice-mill the rough rice is carried by machinery to the top level, so that it can be economically processed by machinery as it descends by gravity to ground level. But we don't think of the rice mill as a machine. In a tower for the manufacture of leaden shot the lead is carried to the top of the tower and dropped through the air in a molten state, so that it forms into spheres before it hits the cooling water at the bottom. But we don't think of the tower as a machine. In the Washington Monument people are carried to the top in elevators and brought back down by gravity. But we don't think of the monument as a machine. On Arkansas farms fodder is lifted to the top of a silo so that it can settle to the bottom by gravity and be consumed by cattle. But we don't call the silo a machine. By a coincidence, however, Nuclear One is popularly called a silo. I think the popular view to be right; Nuclear One *is* a silo, not a machine.

JONES, J., joins in this dissent.

JOHN A. FOGLEMAN, Justice, dissenting. While I must agree with the majority that the cooling tower was equipment, if not machinery, used directly in manufacturing, I do not agree that there was an exemption from the use tax in this case. Tax exemption provisions must be strictly construed in favor of the state and against the taxpayer and to doubt is to deny the exemption. *Heath v. Midco Equipment Co.*, 256 Ark. 14, 505 S.W. 2d 739. Of course, the burden was upon the appellee to show its entitlement to exemption beyond reasonable doubt. *Arkansas Beverage Company v. Heath*, 257 Ark. 991, 521 S.W. 2d 835. This it failed to do in my opinion.

First, I should say that I do not consider that Ark. Stat. Ann. § 84-3106 (D)(2)(d) is an exemption separate from § 84-3106 (D)(2). The sub-section (d) merely describes one of the purposes for which machinery and equipment used directly in manufacturing articles of commerce at manufacturing and processing plants or facilities in the State of Arkansas may be purchased and used to qualify for exemption. The tax was assessed on the materials and components that went into the construction of the tower, not on the tower itself. In order to qualify for the exemption appellee must first show that the tax was assessed on machinery and equipment. This, it did not do. I cannot tell from the record before us that any item on which the tax was assessed was machinery or equipment. Certainly not all of it was.

Secondly, whatever was purchased by Research-Cottrell and used in building the cooling tower, was not used directly in producing or manufacturing, fabricating, assembling, processing, finishing or packaging electricity, as required to qualify under § 84-3106 (D) (2), before consideration can be given to the subordinate uses and purposes set out in sub-sections (a) through (e). In this connection, it should be emphasized that sub-section (d) did not amend the introductory language of § 84-3106 (D) (2) as the majority seems to treat it. It merely added a purpose to subsection (D).

I fear the majority has misread Act 5 of the First Extraordinary Session of 1968. Sec. 2 of that Act is an amendment of subsection (D) of § 6 of Act 487 of 1949, as amended by § 1 of Act 55 of 1955, as amended by § 1 of Act 141 of 1957, as amended by § 1 of Act 35 of 1959, as amended by § 1 of Act 140 of 1961, as amended by § 2 of Act 113 of 1967 (§ 84-3106 (D) Arkansas Stat., 1947) to read as it is reproduced in Vol. 7B Ark. Stat. Ann. Supp. 1973, and not as quoted in the majority opinion. The majority ignores the language of § 84-3106 (D) (2).

In the next place, Research-Cottrell did not purchase machinery and equipment to be installed and utilized by a manufacturing and processing plant or facility in this state. It

did not install and utilize any of the items purchased for its own operation, if that could be called manufacturing. As pointed out before, the assessment is not on machinery and equipment in the first place and the question is not the use to which Research-Cottrell's end product will be put. The question is to what use did Research-Cottrell put those items upon which the tax was assessed. Research-Cottrell did not use them to prevent air or water pollution. Its customer, Arkansas Power & Light Company, did.

Under the construction given this act by the majority, any producer of any machinery or equipment which it sells to some manufacturer in Arkansas for installation and use in Arkansas will have a use tax exemption for everything he purchases for use in producing that machinery and equipment. I submit that the General Assembly had no such intention.