Richard R. HEATH, Director of
Department of Finance and Administration of
the State of Arkansas *v.* WESTARK
POULTRY PROCESSING CORP.

75-200                                          531 S.W. 2d 953

Opinion delivered January 26, 1976
[Rehearing denied Feb. 23, 1976.]

*James R. Cooper, Harlin R. Hodnett, James R. Eads Jr.*, and
*Robert G. Brockman*, for appellant.

*Harper, Young & Smith*, by: *G. Alan Wooten*, for appellee.

JOHN A. FOGLEMAN, Justice. Westark Poultry Processing
Corporation, an Arkansas corporation with its principal

place of business in Fort Smith, paid an assessment of compensating tax made by the Arkansas Director of Finance and Administration. Having made the payment under protest after having exhausted all administrative remedies, it brought this suit for recovery of the payment under Ark. Stat. Ann. § 84-3120 (Repl. 1960). The Director appeals from a decree allowing recovery, asserting that the chancery court erred in holding that Westark was engaged in "manufacturing and/or processing" as the term is used in Ark. Stat. Ann. § 84-3106 (D) (2) (e) (Supp. 1973) and in holding that Westark was using the poultry processing equipment involved. We find that Westark was not entitled to an exemption from the tax because we do not agree that it was engaged in "manufacturing and/or processing" as defined in the statute and reverse.

The facts were stipulated. Insofar as material, they are:

. . . . . [T]he property the subject of the assessment and payment under protest is processing machinery and equipment purchased and used for expanding an existing processing plant or to replace existing machinery used directly in processing or packaging slaughtered poultry for sale for human consumption and which is owned by Westark and leased for a fixed rental to O.K. Processors, Incorporated engaged in the business of processing slaughtered poultry for sale for human consumption; . . . . .

. . . . . none of the property the subject of the assessment used in growing poultry but solely in processing and/or packaging slaughtered poultry for sale in the form of dressed fresh poultry ice packed for transportation and marketing and cooked and/or partially cooked poultry for frozen transportation and marketing; *** after marketing no further processing is required except for cooking fresh poultry, thawing and heating cooked poultry or thawing and further cooking partially cooked poultry; . . . . .

At the outset, we should point out that Westark is claiming an exemption. Contrary to Westark's contention that all

doubts should be resolved in its favor, an exemption provision must be strictly construed against the exemption and to doubt is to deny the exemption. *Hervey* v. *Tyson's Foods, Inc.*, 252 Ark. 703, 480 S.W. 2d 592. The burden is on the claimant to establish its right to the exemption beyond a reasonable doubt. *Arkansas Beverage Company* v. *Heath*, 257 Ark. 991, 521 S.W. 2d 835; *Heath* v. *Midco*, 256 Ark. 14, 505 S.W. 2d 739.

In order to qualify for the exemption, it was necessary that the property upon which the tax was assessed must have replaced machinery used directly in producing, manufacturing, fabricating, assembling, processing, finishing, or packaging of articles of commerce at manufacturing or processing plants or facilities in this state if that machinery would have been exempt at the time of purchase to either create or expand manufacturing or processing plants or facilities within this state.

We have previously held that manufacturing and processing are not two distinct operations and that a taxpayer, in order to be entitled to the exemption must first qualify as a manufacturer. *Hervey* v. *Tyson's Foods, Inc.*, supra. Under the holding in *Tyson* appellee in processing and packaging slaughtered poultry for sale as fresh dressed poultry and cooked poultry for frozen transportation and marketing is not a manufacturer.

We do not agree with appellee that changes in the statute after the period for which the assessment was made in *Tyson's Foods* dictate a different result. Appellee argues and the chancery court apparently held that "manufacturing" and "processing" under the statute applicable during the period for which the assessment was made are separate operations, and that Westark was involved in "processing" when that word is given its ordinary meaning. It relies on Ark. Stat. Ann. § 84-3106 (D) (2) (e), which reads:

> For the purposes of this subsection, the terms "manufacturing" and/or "processing", as used herein, refer to and include those operations commonly understood within their ordinary meaning, and shall also include mining, quarrying, refining, extracting oil and

gas, cotton ginning, and the drying of rice, soy beans and other grains.

It should be noted that the critical words in the statute involved in *Tyson's Foods* were "manufacturing or processing". Appellee contends that the language of subsection (D) (2) (e) quoted above requires an entirely different treatment. We do not agree. The primary reason for our disagreement is that "manufacturing" and/or "processing" mean "manufacturing and processing" *or* "manufacturing or processing". Webster's Third New International Dictionary; Webster's New International Dictionary, Second Edition. The phrase "and/or" has brought more confusion than clarity to the task of construction of statutes, contracts and pleadings. See *Guerin v. State,* 209 Ark. 1082, 193 S.W. 2d 997. But we cannot say that its use rendered the statute meaningless. Construing the statute most strictly against the exemption, the use of "and/or" has not really changed the critical language considered in *Tyson's Foods* because we must read the words as "manufacturing or processing". The use of the words "commonly understood within their ordinary meaning" does not change the approach taken in *Tyson's Foods* and the authorities upon which it is based, where the statute in question contained these same words. See *Pellerin Laundry Machinery Sales ( n. v. Cheney,* 237 Ark. 59, 371 S.W. 2d 524. It should be noteu that among the statutory changes made by the subsection was the specific addition of mining, quarrying, refining, and extracting oil and gas to those operations specifically qualifying for an exemption.

The language of the emergency clause of Act 5 of 1968 of which subsection (D) (2) (e) was a part tends to support our view. In case of ambiguity in a statute, we may look to this clause in construing the act of which it is a part. *Roscoe v. Water & Sewer Improvement District No. 1,* 216 Ark. 109, 224 S.W. 2d 356; *McMahan v. Bd. of Trustees of the University of Arkansas,* 255 Ark. 108, 499 S.W. 2d 56. The General Assembly found and declared that the emergency consisted of a loss in revenues to the state by reason of confusion arising from the "manufacturing and processing" exemption. Increasing the scope of this general exemption to cover Westark's operation certainly would add to, not reduce, the

loss of revenue. If the legislature had intended to add an exemption for appellee's "processing," in spite of this language, it would have been a simple matter to have described it as specifically as it did mining, etc.

To say the least, appellee's entitlement to the exemption is not beyond reasonable doubt. Since our construction of the exemption is dispositive of the case, we do not reach appellant's second contention.

The decree is reversed and the cause dismissed.