SOUTHERN STEEL AND WIRE COMPANY *v.*
Jim WOOTEN, Director, Department of Finance
and Administration et al

81-261                                                    631 S.W.2d 835

Supreme Court of Arkansas
Opinion delivered May 3, 1982

38

*Bethell, Callaway & Robertson,* by: *Bruce H. Bethell,* for appellant.

*James R. Eads, Jr.; H. Thomas Clark, Jr.; Timothy J. Leathers; Robert J. DeGostin, Jr.; Cassandra Wilkins-Slater; Wayne Zakrewski; Kelly S. Jennings; John H. Theis;* by: *Joseph V. Svoboda,* for appellees.

FRANK HOLT, Justice. The appellee assessed appellant with a use tax on various items it had purchased. Following an administrative hearing affirming the assessment, appellant filed a complaint in chancery court seeking a refund in the amount of the taxes it had paid under protest. The chancellor affirmed the assessment on certain machinery, equipment and chemicals.

Appellant produces steel wire products primarily for the refrigeration and freezer industry. It purchases wire, then straightens, cuts, forms, and welds the wire to obtain a finished product. The wire shelves produced are finished with either zinc plating or an electrostatic powder-plastic coating. In the electrostatic power-coating process, the wire shelves are passed through a spray booth where apoxic powder is sprayed on and induced with a 60,000 volt electrical charge, which causes the powder to cling to the

shelves. The shelves are then baked so that the powder forms a permanent finish. An ultraviolet detection system monitors the electrostatic equipment.

Appellant first asserts that the chancellor erred in finding the ultraviolet system, purchased for $8,054.23, was not exempt from taxation. It argues the equipment meets the requirement of machinery or equipment used "directly in the actual manufacturing or processing operation . . . . " Ark. Stat. Ann. § 84-3106 (D) (2) (c) (Repl. 1980). That subsection reads in pertinent part:

> It is the intent of this subsection to exempt only such machinery and equipment as shall be utilized directly in the actual manufacturing or processing operation . . . . The term 'directly' as used in this Act is to limit the exemption to only the machinery and equipment used in actual production during processing, fabricating or assembling raw materials or semifinished materials into the form in which such personal property is to be sold in the commercial market . . . .

The electrostatic equipment was purchased following an explosion within the system. It serves two functions — (1) it is a safety monitor, which acts to shut down the powder-coating system in the event a spark or fire is detected in the system; and (2) it provides a printout analyzing the performance of the powder-coating process. Although the powder coating system operates normally 99% of the time, appellant considered the ultraviolet system as being vital and necessary in monitoring the entire system.

Appellee responds that neither function demonstrates that the detection system meets the requirements of § 84-3106 (D) (2) (c). Appellee characterizes the ultraviolet detection system as a "burglar alarm" which operates only in the event of a fire. Further, as a monitoring apparatus, it merely is an "information device" which is not used directly in the manufacturing process.

In *Cheney* v. *Georgia Pacific Paper Corp.*, 237 Ark. 161,

371 S.W.2d 843 (1963), we held that informational devices used to record the functioning of other equipment were not exempt. Further, we have said it is well established that any exemption provision must be strictly construed against the exemption, and to doubt is to deny the exemption. *S.H. & J. Drilling Corp.* v. *Qualls, Director,* 268 Ark. 71, 593 S.W.2d 178 (1980); and *Ark. Beverage Co.* v. *Heath, Director,* 257 Ark. 991, 521 S.W.2d 835 (1975). The appellant has the burden of clearly establishing the exemption beyond a reasonable doubt. *Heath* v. *Westark Poultry Processing Corp.,* 259 Ark. 141, 531 S.W.2d 953 (1976). On appeal we review the exemption cases *de novo* and do not reverse the chancellor's findings of fact unless it is clearly against the preponderance of the evidence. *Ark. Beverage Co.* v. *Heath, Director, supra.* Here, tested by these rules we cannot say that the chancellor's finding that the ultraviolet system is not exempt is clearly against the preponderance of the evidence.

Appellant next contends the chancellor erred in finding that the control panels, air cylinders, and transformers were not exempt from the use tax as "machinery purchased to replace existing machinery in its entirety." Ark. Stat. Ann. § 84-3106 (D) (2) (b). We cannot agree.

During the period encompassed by the audit, appellant was enlarging its manufacturing plant and increasing production. Component parts necessary to construct control panels were purchased for $74,416.96, which appellee taxed. The control panels are designed from scratch and plugged into a welding machine to control the welding process. Appellant urges that each is a separate piece of machinery and that since these control panels can be utilized with different welding machines and are physically plugged into a welder to achieve the desired results, they are distinguishable from the component parts of a drilling rig which we considered in *S.H. & J. Drilling Corp.* v. *Qualls, supra.* There we held that where the appellant purchased certain items to replace existing items of a drilling rig, even if the individual item was considered a machine within the definition of *Heath* v. *Research-Cottrell, Inc.,* 258 Ark. 813, 529 S.W.2d 336 (1975), once they were assembled into a rig and are designed to accomplish a single purpose, they

become a single unit and are not exempt from taxation. We find that reasoning controlling here. It appears undisputed that the control panels, air cylinders and transformers are physically combined with other existing components in order to construct a welding machine which has a single purpose and function. The control panels and welding machines are interconnected or component parts of welding machines and designed to accomplish a single purpose — welding wire to form shelves. They must function simultaneously as a single unit. The trial court correctly found these items did not constitute replacement of the welding machines in its entirety and, therefore, are not exempt.

Appellant further argues that the chancellor erred in finding zinc anode baskets and plating racks consisting of racks, tips and studs purchased by appellant for $18,461.90 were not exempt from the use tax as machinery or equipment used directly in the manufacturing process. These items conduct electricity necessary to perform the zinc-plating process and are connected to the conveyor system. The zinc anode baskets also hold the zinc chemical. Appellant argues these items are machinery and used directly in the manufacturing process. We feel these items, component parts of the plating machine, are not exempt for the same reason the control panels are not exempt. They have no independent function. They are interconnected with the zinc plating machine to accomplish a single purpose. See *S.H. & J. Drilling Corp.* v. *Qualls, supra.* Appellant has not met its required burden of proof. To doubt is to deny.

The appellant next asserts the chancellor erred in finding an analytical PH recorder purchased for $500.80 was not exempt as machinery or equipment used directly in the manufacturing process. The appellant claims exemption under § 84-3106 (D) (2) (d). That subsection exempts "[m]achinery and equipment required by State law or regulations to be installed and utilized by manufacturing or processing plants or facilities in this State to prevent or reduce air and/or water pollution or contamination which might otherwise result from the operation of such plant or facility." Admittedly, this is only a monitoring device. Even so, appellant argues that it is necessary to monitor the

discharge of waste materials and chemicals in order to be in compliance with state pollution law. The flaw in this argument is that the PH recorder itself does not "prevent or reduce air and/or water pollution or contamination." Its purpose is merely to inform the appellant of the level of pollutants present in the waste water discharge. Appellant can then take corrective action. There is no evidence here, as there was in *Heath* v. *Research-Cottrell, supra,* that this or any other equipment actually prevented or controlled pollutants in the waste materials. Here, again, when we apply our well established standards of appellate review in tax exemption cases, we cannot say that the chancellor's finding is clearly against the preponderance of the evidence.

Neither do we agree with appellant's last contention for reversal that the chancellor erred in finding that certain chemicals purchased by it were not entitled to exemption from the use tax as items purchased for resale. The "sale for resale" exemption is § 84-1904 (i), which is made applicable by § 84-3106 (B). Appellant argues that the coating and plating process of the finished article could not be properly completed and marketable without these chemicals and, therefore, they constitute an essential part of the finished product and are necessary to its completeness. The appellee correctly responds that the chemicals used in the manufacturing process become neither a recognizable or integral part of the finished shelves. It appears that the chemicals are merely cleansing agents in the manufacturing process which are used at separate rinsing stages to remove not only chemicals but also dirt and oil accumulations from the unfinished shelves. In the circumstances, when we strictly construe, as we must, tax exemptions against the claimant, we certainly cannot say that the chancellor's finding that these items are not exempt under "sale for resale" exemption, § 84-1904 (i), is clearly against the preponderance of the evidence. *Great Lakes Chem.* v. *Wooten,* 266 Ark. 511, 587 S.W.2d 220 (1979); and *Hervey* v. *Internat'l. Paper Co.,* 252 Ark. 913, 483 S.W.2d 199 (1972).

Affirmed.