The Honorable David C. Hausam State Representative 1302 Quail Run Circle Bentonville, AR 72712-4175
Dear Representative Hausam:
I am writing in response to your request for my opinion regarding certain issues arising from the enactment of Act 115 of 2001, which provides for the conversion of any qualified nonprofit corporation supplying water services to customers into a newly created public entity known as a "water authority." Specifically, you have asked me to address the following two questions:
 1. Are public water authorities exempt from the payment of sales taxes in connection with their acquisition and purchase of meters, pumps, tanks, pipes and other related equipment and appurtenances associated with the expansion of water lines or otherwise associated with the day-to-day obligations of the public water authority?
 2. Do employees of public water authorities qualify for participation in the Arkansas Public Employees Retirement System [APERS] as established pursuant to A.C.A. § 24-4-101 et seq.?
RESPONSE
In my opinion, the answer to your first question is "no." With respect to your second question, although the statutory scheme considered in isolation would appear to support declaring water authority employees eligible for participation in APERS, I believe such participation might invite constitutional attack if, notwithstanding their designation as "public," the water authorities' activities retain a distinctly "private" character. Moreover, the APERS board has extremely wide discretion under A.C.A. § 24-4-746 to deny eligibility based on its determination that participation would be "detrimental to the system."
Question 1: Are public water authorities exempt from the payment of salestaxes in connection with their acquisition and purchase of meters,pumps, tanks, pipes and other related equipment and appurtenancesassociated with the expansion of water lines or otherwise associated withthe day-to-day obligations of the public water authority?
As noted in your request, Act 115 of 2001, codified at 4-35-201 et seq.
(Supp. 2001) (the "Act"), provides for the conversion of private nonprofit water suppliers into "water authorities." Section 4-35-201 of the Code describes the legislative intent of Act 115 as follows:
 It is the intent of the General Assembly to provide a means by which a not-for-profit corporation involved in the sale, transmission, and distribution of potable water to members of the public and others may convert its entity status from that of a body corporate to that of a body politic, thereby allowing such an entity the opportunity to access the tax-exempt capital markets and thereby assuring the State of Arkansas and the customers of such an entity of the lowest water rates possible.
In addressing the issue of a water authority's tax obligations, I am guided by the following principles:
 It is well-settled that taxation is the rule and exemption the exception. The Arkansas Supreme Court has consistently held that exemptions from taxation must always be strictly construed, regardless of merit, in favor of taxation and against exemption. City of Fayetteville v. Phillips, 306 Ark. 87, 91, 811 S.W.2d 308 (1991). There can be no implied exemption, and to doubt is to deny the exemption. C.J.C. Corporation v. Cheney, 239 Ark. 541, 544, 390 S.W.2d 437
(1965). The presumption is against any surrender of the state's taxing power, and in order for this presumption to be refuted there must be a clear indication of the legislative intent to provide for the exemption. Id. Additionally, a taxpayer has the burden of establishing the right to an exemption beyond a reasonable doubt. Pledger v. Baldor Int'l., Inc., 309 Ark. 30, 33, 827 S.W.2d 646 (1992).
Ark. Op. Att'y Gen. No. 93-328.
Assuming a water authority indeed qualifies as a public entity performing purely governmental functions, see discussion infra, its real property will be exempt from ad valorem taxation pursuant to Ark. Const. art. 16, § 5. See also A.C.A. § 26-3-301(9) (exempting from ad valorem taxation public property used exclusively for public purposes); City ofFayetteville v. Phillips, 306 Ark. 87, 90-91, 811 S.W.2d 308, 310
(1991). However, neither the Constitution nor the Code contains any provision likewise generally exempting from sales tax transactions required for the operation of a "body politic."
A number of specific statutory exemptions to sales and use taxes are set forth in subchapter 4 of chapter 52 of title 26 of the Code and at A.C.A. § 4-53-112 et seq. (Repl. 1997 Supp. 2001).[1] In my opinion, none of these exemptions applies to purchases required to enable the operations undertaken by a water authority, with the following two possible exceptions. Subsection 26-52-402(a)(3) of the Code exempts:
 Gross receipts or gross proceeds derived from the sale of tangible personal property consisting of machinery and equipment required by state law or regulations to be installed and utilized by manufacturing and processing plants or facilities in this state to prevent or reduce air or water pollution or contamination which might otherwise result from the operation of the plant or facility.
Subsection 26-53-114(a)(3) likewise exempts:
Machinery and equipment required by state or federal law or regulations to be installed and utilized by manufacturing or processing plants or facilities or cities or towns in this state to prevent or reduce air or water pollution or contamination which might otherwise result from the operation of the plants or facility or city or town.[2]
Although one might be inclined to read these exemptions as applying to equipment required by law to ensure the purity of water supplied by a water authority, I believe any such reading would be mistaken. Although a water authority might indeed reduce water pollution by extracting and treating possibly tainted water for delivery to consumers, the pollution in such an instance is not of the sort" which might otherwise result from the operation of the plant or facility" — or, for that matter, "from the operation of the . . . city or town." Rather, it is pre-existing pollution of precisely the sort that the facility exists to remedy as the goal of its commercial operations, not pollution resulting in the course of its commercial operations. In accordance with this distinction, I am informed that DFA does not extend to water treatment facilities the sales-tax exemption available to wastewater treatment plants.
For the above reasons, I question whether the legislature intended the exemption to apply to a facility whose product itself is clean water, as is the case with a water authority. I am reinforced in this suspicion by the full text of A.C.A. § 26-52-402(c)(1), which provides:
 It is the intent of this section to exempt only such machinery and equipment as shall be utilized directly in the actual manufacturing or processing operation at any time from the initial stage where actual manufacturing or processing begins through the completion of the finished article of commerce and the packaging of the finished end product. The term "directly" as used in this act is to limit the exemption to only the machinery and equipment used in actual production during processing, fabricating, or assembling raw materials or semifinished materials into the form in which such personal property is to be sold in the commercial market.
The assumption underlying this statute appears to be that the exemption will apply to machinery contemporaneously used to avoid or to remedy pollution incidentally generated in the course of manufacturing or processing some unrelated commercial product. See Aluminum Co. of Americav. Weiss, 329 Ark. 225, 228, 946 S.W.2d 695 (1997) ("The exemption provided by the statute is applicable to machinery or equipment installed to mitigate pollution resulting from the continuing operation of the plant or facility."); see also Heath v. Research-Cottrell, Inc.,258 Ark. 813, 529 S.W.2d 336 (1975) (exempting nuclear cooling tower used to mitigate heat from water before discharge into the environment). As noted above, the only exception to this rule appears to be that the exemption extends to equipment used in the treatment of wastewater generated in the course of a municipality's normal operations. I agree with DFA that this exemption does not apply to equipment used in extracting, purifying and delivering water for sale to the public.
The Act expressly declares that a water authority is entitled to various tax advantages. Section 4-35-210 provides:
 Each project, and all income therefrom, is determined and declared by the General Assembly to be public property used exclusively for a public purpose and shall be exempt from ad valorem taxation by all taxing authorities.
Section 4-35-215 further provides:
 (a) The principal of and interest on bonds issued under the authority of this subchapter shall be exempt from all state, county, and municipal taxes.
 (b) This exemption shall include income, inheritance, and estate taxes.
Conspicuously absent in the Act is any suggestion that a water authority is exempt from sales-tax liability on purchases required to support its operations. Subsection 4-35-209(5) grants a water authority the power "[t]o acquire, whether by purchase, gift, lease, devise, or otherwise, property of every description which a board of directors may deem necessary to the acquisition, construction, equipment, improvement, enlargement, operation, administration, or maintenance of a project, and to hold title thereto." Subsection 4-35-215(a) further provides that "[t]he proceeds derived from all of the bonds other than refunding bonds may be used only to pay the costs of acquiring, constructing, improving, enlarging, and equipping the project with respect to which they were issued. . . ." Neither of these provisions nor any other contained in the Act suggests that a water authority should be relieved of the obligation to pay sales taxes. The legislature's silence on the issue stands out all the more in light of the fact that it expressly granted water authorities relief from certain other types of taxes. As the court stated in Gazawayv. Greene County Equalization Board, 314 Ark. 569, 575, 864 S.W.2d 233
(1993): "The phrase expressio unius est exclusio alterius is a fundamental principle of statutory construction that the express designation of one thing may properly be construed to mean the exclusion of another. Chem-Ash, Inc. v. Arkansas Power Light Co., 296 Ark. 83,751 S.W.2d 353 (1988); Venhaus v. Hale, 281 Ark. 390, 663 S.W.2d 930
(1946)." Applying this principle, I believe water authorities are obligated to pay sales tax on purchases made in the course of their operations.
Question 2: Do employees of public water authorities qualify forparticipation in the Arkansas Public Employees Retirement System asestablished pursuant to A.C.A. § 24-4-101 et seq.?
Eligibility for state retirement benefits under the Arkansas Public Employees' Retirement System (APERS) is set forth at A.C.A. § 24-4-101 etseq. (Repl. 2000 Supp. 2001). In order to qualify for participation in APERS, an employer must be a "public employer" — a term defined by statute as "the State of Arkansas or any participating public employer." A.C.A. § 24-4-101(31). Subsection 24-4-101(29) defines the term "participating public employer" as including:
 (A) Any county, municipality, rural waterworks facilities board, regional airport authority, public facilities board, regional solid waste management board, joint county and municipal sanitation authority or regional water distribution board in the state whose employees are included in the membership of the Arkansas Public Employees Retirement System;
* * *
(C) A . . . local unit of government as provided for in § 24-4-746.
The referenced A.C.A. § 24-4-746 provides:
 The Board of Trustees of the Arkansas Public Employees' Retirement System shall have the authority to promulgate such rules and regulations as are necessary to provide for the participation of employers defined as public rehabilitative services corporations or other local units of government under the provisions of § 4-34-101 and such local units of government as are provided for under the Arkansas Code. Provided, however, the board shall not admit or retain any employer whose participation in the Arkansas Public Employees' Retirement System would jeopardize the tax-qualified status of the plan under the Internal Revenue Code or that would subject the plan to additional federal requirements, or to any other consequence that the board would determine to be detrimental to the system.
Various provisions of these statutes bear comment. First, I am struck by the fact that the definition of "participating public employer" set forth at A.C.A. § 24-4-101(29)(A) includes rural waterworks facilities boards and regional water distribution boards — entities whose functions are closely related to those of a water authority board. Notwithstanding this similarity, the fact remains that water authority boards, whether by oversight or not, are missing from the list of entities expressly listed at A.C.A. § 24-4-101(29)(A) as eligible to participate in APERS.
However, the question remains whether a water authority board might qualify as a "local unit of government" eligible to participate pursuant to A.C.A. §§ 24-4-101(29)(a) and -746. In the attached Ark. Op. Att'y Gen. No. 99-277, I addressed the question of what constitutes a "local unit of government" in the course of considering whether an "habilitative," as distinct from a "rehabilitative," facility might qualify to become a "participating public employer" given its designation as "a public body and a body corporate and politic." A.C.A. §4-34-102(b). In considering this question, I offered the following:
 The definitions of "local unit of government" offered at various points in the Code strongly suggest that the legislature intended that term to apply only to traditional governmental entities. For instance, A.C.A. § 14-16-504 provides that "`local unit of government' means a city, town, or county." Similarly, A.C.A. § 16-105-501 defines the phrase as meaning "a county, city of the first class, city of the second class or incorporated town.". . .
 However, the issue is complicated considerably by the Code's defining a habilitative services corporation as "a public body and a body corporate and politic." A.C.A. § 4-34-102. The term "public body" has been consistently applied in the Code to entities that appear clearly to qualify as "units of government." For instance, A.C.A. § 17-33-101
defines the term as "any agency of the State of Arkansas or any political subdivision of the state." Similarly, A.C.A. § 22-9-302
defines the term as "the State of Arkansas or any officer, board, or commission of the state, any county, city, municipality or other political subdivision, or any of the agencies thereof." A.C.A. § 14-188-103 defines the term "state public body" as meaning "any city, town, county, municipal corporation, commission, district, authority, or other political subdivision of this state." A.C.A. § 14-169-203
defines the phrase "state public body" as meaning "any city, town, county, municipal corporation, commission, district, authority, other subdivision, or other public body of the state."[3]
 In accordance with such definitions, the Code has expressly identified as "public bodies" such entities as a housing authority, A.C.A. § 14-169-211, a rural development authority, A.C.A. § 14-188-109, the Arkansas Development Finance Authority, A.C.A. § 15-5-201, and the State Highway Commission, A.C.A. § 23-12-304. These organizations all might be considered "units of government" insofar as they not only implement but make public policy.
In Act 151 of 2001, the legislature amended A.C.A. § 24-4-746 in a manner that strongly undermines the extremely narrow interpretation of the term "local unit of government" suggested in the first paragraph of the above excerpt. Prior to the amendment, the statute provided that the APERS board would regulate "employers defined as rehabilitative services corporations under the provisions of § 4-34-101 and such local units of government as are provided for under the Arkansas Code." A.C.A. §24-4-746 (Repl. 2000). However, as amended, the statute affords the board such regulatory authority over "employers defined as public rehabilitative services corporations or other local units of government" (emphasis added) — a coinage that clearly reflects the legislature's conviction, which it apparently felt strongly enough to effect the amendment, that the term can apply to an entity other than a city, town or county.
Subsection 4-35-202(9) of the Code defines a "water authority" as being "that body politic and governmental entity organized pursuant to the provisions of this subchapter." Subsection 4-35-206(b)(1) provides that once the Arkansas Soil and Water Conservation Commission approves an application for reconstitution and issues a certificate of incorporation, "the water authority referred to in the certificate of incorporation shall come into existence and shall constitute a body corporate and politic and a political subdivision of the state. . . ." Among the powers afforded a water authority is the ability "[t]o invest in obligations that are direct or guaranteed obligation of the United States or other securities in which public funds may be invested under the laws of this state. . . ." Given these repeated references to the public, governmental nature of a water authority, it would appear that under the statute a water authority board is eligible to become a participating public employer, subject, of course, to the highly significant proviso that APERS retains the discretion to reject the application of any employer "whose participation would . . . subject the plan . . . to any . . . consequence that the board would determine to be detrimental to the system."[4] A.C.A. § 24-4-746.
One potential influence on the APERS board in exercising its discretion is that the Act might be assailable on constitutional grounds. Subsection4-35-202(6) defines as follows a corporation "qualified" to convert into a governmental entity of the sort described above:
 "Qualified corporation" means any not-for-profit corporation which provides, distributes, transmits, treats, pumps, or stores raw or potable water to or for the benefit of members of the general public and commercial, industrial, and other users.
Sections 4-35-205 and -206 provide that such an entity, in order to obtain bond-issuing authority but apparently without changing its essential function of selling water to the public, can transform itself from public to private by the mere act of applying to do so. In Ark. Op. Att'y Gen. No. 99-277, I offered the following analysis of A.C.A. §4-34-101 et seq., which established a mechanism whereby a private nonprofit corporation contracting with the state to provide habilitative care to individuals with special educational or training needs can convert to "a public body and a body corporate and politic" simply by applying to do so:
 A.C.A. § 4-34-102 defines as "public bodies" institutions whose contractual dealings with the state appear to have a decidedly "private" flavor and which will continue to be treated as private corporations unless they observe the mere formality of filing for conversion. All statutes are presumed constitutional, Stone v. State, 254 Ark. 1011, 498 S.W.2d 634 (1973), and if it is possible to construe an act as constitutional, a court not only may, but should and will do so. Love v. Hill, 297 Ark. 96, 759 S.W.2d 550 (1988). Although I am assuming the constitutionality of the statute in this Opinion, this legislation may be assailable on constitutional grounds if a court, after reviewing facts not before me, were to conclude that habilitative services corporations are de facto private, notwithstanding their statutory designation as public. In Chandler v. Board of Trustees of the Arkansas Teacher Retirement System of the State of Arkansas, 236 Ark. 256, 365 S.W.2d 447 (1963), the Arkansas Supreme Court declared unconstitutional several statutes that permitted employees of the Arkansas Education Association (the AEA) and the Arkansas Teacher Association (the ATA) to participate in the State Teacher Retirement System. The Court concluded that the AEA and the ATA were private organizations, rather than agencies of the state, and that any use of tax dollars to fund its members' retirement offended the Arkansas Constitution's privileges and immunities clause (art. 14, § 3), the illegal exaction clause (art. 16, § 13) and the due process clause (art. 2, § 8).
Although the activities of a water authority probably have less of a "private flavor" than do those of a habilitative services corporation, I believe that both constitutional and APERS-compliance questions necessarily arise when the government opens the public purse by simply declaring "governmental" activities that before the declaration were deemed "private." See IRS Private Letter Ruling 8045106 (ruling that a volunteer fire department's retirement plan was not a "governmental plan" when the department was independent of and not formed by local government).
Having voiced this concern, I will assume in the remainder of my discussion that the Act is constitutional and that a water authority board would qualify as a participating public employer. Given these assumptions, the question will remain whether specific individuals performing services on behalf of a water authority will be eligible to receive benefits. The definition of "employees" set forth at A.C.A. §24-4-101(17)(A)(i)(a) provides in pertinent part:
 "Employees" means all officers and employees of any office, agency, board, commission . . . or department of a public employer whose compensations were or are payable from funds appropriated by the public employer and all otherwise eligible employees whose compensations were or are payable in whole or part from federal funds. . . .
In my opinion, again assuming the constitutionality of the Act, a water authority clearly qualifies as a "public employer," and employee salaries paid from bond revenues and rate collections likewise qualify as "funds appropriated by the public employer." Accordingly, assuming the APERS board, in its discretion, agreed to designate a water authority a participating public employer — a question that might turn on its independent analysis of the constitutional issue discussed above — I believe it would further deem water authority employees paid from bond revenues or rate collections eligible to participate and to receive benefits. I hold this opinion despite the fact that the definition of "nonstate employees" set forth at A.C.A. § 24-4-101(27), which includes "waterworks facilities board employees" and "regional water distribution board employees," does not expressly include water authority employees. To the extent this omission reflects an inadvertent oversight at the time the General Assembly enacted Act 115 of 2001, legislative clarification would appear advisable.
However, as I noted in Ark. Op. Att'y Gen. No. 2000-105:
 [I]n determining eligibility, [APERS] regularly considers the facts to determine whether an individual qualifies as an independent contractor under IRS standards. . . . [T]he state Attorney General lacks the authority or expertise to render an opinion on this issue, which concerns a matter specifically within the regulatory jurisdiction and authority of a federal agency.
Moreover, as noted above, in making any determination, APERS will further consider whether employer participation and employee eligibility might in any way prove "detrimental to the system." A.C.A. § 24-4-746. This determination is likewise factual in nature and hence beyond the scope and authority of this office.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh
Enclosure
[1] The law regarding sales and use taxes is set forth in the Arkansas Gross Receipts Act of 1941, § 26-52-101 et seq. (Repl. 1997 Supp. 2001) and the Arkansas Compensating Tax Act of 1949, § 26-53-101 et seq.
(Repl. 1997 Supp. 2001), respectively.
[2] The phrase in this statute reading "air or water pollution or contamination which might otherwise result from the operation of the . . . city or town" unaccountably does not appear in A.C.A. §26-52-402(a)(3). Upon inquiry, I have been informed that the Department of Finance and Administration interprets A.C.A. § 26-53-115(a)(3) as exempting from sales and use taxation certain purchases associated with the operation of wastewater treatment plants, see DFR Regulation No. GR-66 — a reading apparently based on the reasoning that wastewater is pollution produced from the "operation" of a municipality.
[3] The Code at various points uses the related term "public entity," which is typically defined at A.C.A. § 19-2-502 as meaning "state agencies, including all constitutional offices and agencies, boards, and commissions, state institutions of higher education, municipalities, counties, school districts, educational cooperatives, improvement districts, and other public officials or public offices."
[4] I am informed that APERS as a matter of policy now requires that any entity seeking to participate in the program produce a private letter ruling from the IRS opining that the entity's participation would not jeopardize the tax-qualified status of the plan under the Internal Revenue Code.