JOHN McMAHAN ET AL v. THE BOARD OF
TRUSTEES OF THE UNIVERSITY OF ARKANSAS
ET AL

73-55                                             499 S.W. 2d 56

Opinion delivered September 24, 1973

*John T. Lavey,* for appellants.

*Ray Trammell* and *Jim Guy Tucker,* Atty. Gen., by:
*Lewis Smith,* Asst. Atty. Gen., for appellees.

CARLETON HARRIS, Chief Justice. This litigation involves an effort by appellants to obtain the names of those persons who were given complimentary tickets for all football games participated in by the University of Arkansas, in this State, during the Fall periods of 1969, 1970 and 1971; also, the number of complimentary tickets received by each of those persons. Suit was instituted in

the Pulaski Circuit Court seeking to mandamus the Board of Trustees of the University to furnish this information. It might be here stated that other information relative to complimentary tickets was sought in the complaint, but all information has been furnished except the names of the recipients of complimentary tickets. The trial court, after hearing evidence, held that the lists of persons receiving complimentary football tickets to the games played in this State during the years 1969, 1970 and 1971 "are not public records as contemplated by those statutes [Freedom of Information Act], not being by law required to be kept and, further, plaintiffs making no showing of any legitimate personal interest in themselves or the class they represent or legitimate public interest being served in said items being made available to them for copying and inspection, that the petition filed herein be dismissed." From this judgment, appellants bring this appeal. For reversal, it is asserted that the trial court erred in dismissing the petition. A second point is asserted, viz., that the trial court erred in refusing to enforce a request for Subpoenas *Duces Tecum.*

Appellees set out seven points, i.e., seven reasons, why the judgment of the trial court should be sustained;[1] while more than one appear to contain merit, there is no need to discuss them in this opinion since we are of the view that point "C", in itself, precludes appellants from prevailing, i.e., the Freedom of Information statute is inapplicable to the lists in issue.

Appellants' entire position is based upon Act 93 of 1967 (Ark. Stat. Ann. § 12-2801—07 [Repl. 1968]), and they argue that, under its provisions, they are entitled to

---

[1]"Trial court should be affirmed on its dismissal of appellants' petition.

A. Jurisdiction is lacking because this is a suit against the state prohibited by Article 5, Section 20, Arkansas Constitution.

B. Discretionary authority regarding these lists is constitutionally protected by Amendment 33, Arkansas Constitution.

C. In the alternative, the Freedom of Information statute is inapplicable to the lists in issue.

D. Plaintiffs made no showing of necessary interest to compel production of the lists.

E. An action in nature of mandamus cannot be used to enforce alleged rights which are non-existent under Act 93 of 1967.

F. Scope of judicial review of administrative action is limited.

G. Appellants failed to sustain the burden of proof."

the information sought. Appellants first refer to the "preamble" of the act, but the reference actually is to a portion of the title, as supporting their position. This contention need not be discussed for we have said many times that the title of an act is in no sense controlling, and is only properly considered if the act itself is ambiguous. In *Roscoe* v. *Water and Sewer Improvement District No. 1*, 216 Ark. 109, 224 S.W. 2d 356, we said:

> "The title of an Act is in no sense controlling, and, like a preamble, or emergency clause, it may be looked to for the purpose of ascertaining a meaning not fully expressed in the Act proper, yet—as we have so often said—where there is doubt as to the legislative intent, due either to ambiguous phrases or a suggested word omission, and where the missing word can be appropriately supplied by determining from the title, preamble, or other collateral phrases just what the lawmakers intended to accomplish, it is then proper to consider any or all of these collateral aids."

Since we find no ambiguity, there is no reason to consider the preamble, or the title.

Pertinent portions of § 12-2803 and 2804 provide as follows:

> " 'Public records' are records made, maintained or kept by any public or governmental body, board, bureau, commission or agency of the State or any political subdivision of the State, or organization, corporation or agency, supported in whole or in part by public funds, or expending public funds. ***

> "12-2804. Except as otherwise specifically provided by laws now in effect, or laws hereafter specifically enacted to provide otherwise, all state, county, township, municipal and school district records *which by law are required to be kept and maintained* [our emphasis] shall be open to inspection and copying by any citizen of the State of Arkansas during the regular business hours of the custodian of the records."

Webster's New International Dictionary defines public record as "A record required by law to be made

and kept; a record made by a public officer in the course of his legal duty to make it; a record filed in a public office and open to public inspection."

This definition is the general definition of a public record, but, of course, statutory requirements are paramount. It is here contended that the statutory definition of public records makes the records sought subject to public inspection, but if the language of § 12-2803 at first blush lends itself to this construction, such an interpretation quickly vanishes upon reading § 12-2804. Of course, a statute must be read in its entirety to reach a proper interpretation.

In *McCaa Chevrolet Company* v. *Bounds, Admr.,* 207 Ark. 1043, 183 S.W. 2d 932, we said:

"In ascertaining the intention of the legislature recourse may be had to the entire act under consideration. 'The different parts of a statute reflect light upon each other . . . Hence, a statute should be construed in its entirety, and as a whole.' 50 Am Jur. 350. 'The intention of the lawmaker is to be deduced from a view of every material part of the statute'." [Citing numerous cases].

It is at once apparent from even a cursory reading of § 12-2804 that the records which the General Assembly had in mind are those mentioned in the italicized phrase "which by law are required to be kept and maintained." The Freedom of Information Act *does not itself provide that any particular records shall be kept;* it only provides that records which are required by some statute (other than the Freedom of Information Act) to be made and kept, shall be open to public inspection. There is no semblance of ambiguity in this provision and whether the statute be construed narrowly or broadly, the italicized phrase can only mean one thing, viz., that the Freedom of Information Act, as far as inspection of records is concerned, applies only to those records which by statute are required to be kept and maintained. Appellant has cited no statute, nor do we know of any, that requires the University of Arkansas, or its Athletic Department, to keep and maintain a record of complimentary tickets

given, either the number of same, or the names of the persons receiving them. It is true that such a record is kept and appellants argue that the act permits public inspection of any record which is maintained or kept by any public or governmental body, board, bureau, commission or agency of the State. In other words, it is contended that any time such a State agency keeps a record, though not required by law, it immediately becomes subject to the provisions of the Freedom of Information Act. It is apparent, from what has been said, that we do not agree with this position. Of course, the athletic accounts, including the number of complimentary tickets given, and the lists of names, are available to the auditors, both for an interior audit by the University, and for the State Legislative Audit Division, but this does not mean that the lists are a public record, and the fact that an agency may have confidential records is recognized by statute. Ark. Stat. Ann. § 13-1505 (Repl. 1968) sub-section (D) provides in part:

> "The Legislative Auditor shall have access at all times to all of the books, accounts, reports, *confidential or otherwise* [our emphasis], vouchers, or other records of information in any state office, department, board, bureau, or institution of this state. Nothing in this section shall be so construed as authorizing or permitting the publication of information now or hereafter prohibited by law."

According to the testimony, the lists of numbers of complimentary tickets, and the lists of names, are compiled primarily because of the contracts that the University has with other institutions covering the games played in Arkansas during a particular season. It appears that, according to most of the exhibits offered, the total gate, after deductions of expenses (including officials' fees, travel expenses, and complimentary tickets), was split between Arkansas and the Southwest Conference team being played. As an example, Mr. George Cole of the Athletic Department at the University, testified:

> "When we sign a contract with Texas University or TCU they state in the contract that they're playing Arkansas; that they would want, I'll use an arbi-

trary figure, they would [want] five hundred dollars worth of complimentary tickets. Then, when they make their report they deduct that. Now then, we deduct five hundred dollars worth from our complimentary tickets and if we give more than that we have to pay Texas half of the price of that ticket for any over five hundred dollars. That's in the contract."

Fred S. Vorsanger, Vice-President for Business Affairs and Secretary to the Board of Trustees, testified that the lists were made to be used, if requested, as a part of the settlement with the opposing team; that the other school would be primarily interested in numbers (of complimentary tickets) but that the names of the recipients of the tickets were kept in case that school wanted to confirm the numbers.

As previously stated, appellants have obtained all information sought except the names of the ticket holders. For instance, an exhibit was offered showing the disposition of football tickets for games played in Arkansas during the Fall of 1970, reflecting as follows:

| " DISPOSITION OF TICKETS | TOTAL | PER CENT OF TOTAL |
|---|---|---|
| SOLD TO: | | |
| Public | 237,313 | 78.26% |
| General Admission (High School, Miscellaneous) | 5,896 | 1.94 |
| Faculty and Staff | 8,829 | 2.91 |
| Students | 31,154 | 10.27 |
| Complimentary | 8,146 | 2.68 |
| Opponents | 11,971 | 3.94 |
| TOTAL TICKETS SOLD AND COMPLIMENTARY TICKETS | 303,309 | 100% |
| COMPLIMENTARY TICKETS BY GROUP: | | |
| "A" Men | 487 | 6.39% |
| Board of Trustees | 448 | 5.40 |
| Faculty and Staff | 1,898 | 23.20 |
| Legislators | 1,892 | 23.21 |
| Miscellaneous | 337 | 4.10 |

| | | |
|---|---|---|
| Newspaper | 800 | 9.80 |
| Radio Stations | 1,170 | 14.30 |
| State Officials[2] | 232 | 2.80 |
| Team | 882 | 10.80 |
| TOTAL COMPLIMENTARY TICKETS BY GROUP | 8,146 | 100% |
| RECEIPTS | $1,347,461.71" | |

For the reasons herein stated, and without discussing further defenses advanced by appellees, we hold that appellants are not entitled, under the statute (Freedom of Information Act), to the information sought.

As to the second point for reversal, we find no merit. Appellants sought to have Subpoenas *Duces Tecum* served on Cole and Vorsanger requiring them to appear with all rules and regulations pertaining "to the physical and financial accounting for football tickets" for the years heretofore mentioned. It is difficult to determine from the record just what action was taken by the trial court. An order had been signed directing the mentioned individuals to bring such records, but appellants say that the court sustained objection to the subpoenas being issued, and refused to order appellees to produce the rules and regulations described in the subpoenas.[3] At any rate, discussion of this point would be academic since the testimony reflects that there are no such written rules and regulations.

Affirmed.

GEORGE ROSE SMITH, J., not participating.

---

[2] Perhaps, in view of the holding herein, it might be well to state that this category, "State Officials", does not include Supreme Court Justices, who are not recipients of complimentary tickets.

[3]The record reflects that the court stated:
"I very reluctantly signed those two orders. I left or let my reluctance be known to counsel for petitioner. I had no earthly idea what he wanted insofar as rules and regulations. If you have a little booklet that you call rules and regulations, bring it. I am going to deny your request at this time. They can produce it, that is, your witnesses. You can develop the facts in your inquiry; don't go into it right now."