The Honorable Jimmy "Red" Milligan State Representative P.O. Box 68 Yellville, AR 72687-0068
Dear Representative Milligan:
I am writing in response to your request for an opinion concerningAct 1727 of 2003, which established judicial districts and the number of judges for district courts, in implementation of Amendment 80 to the Arkansas Constitution.[1] Your question pertains, specifically, to Section 2 of Act 1727, and its effect on the Marion County District Court. Marion is among the counties listed in Section 2 of Act 1727, which requires that each county listed therein "shall have one (1) district court and one (1) district judge[,]" and which provides further that "[t]he district court shall be located in the county seat of thecounties listed. . . ." Acts 2003, No. 1727, § 2 (a) and (b) (emphasis added). Your question is prompted by this latter provision. You have asked:
 Does Act 1727 of 2003, Section 2 (b), require a county-wide District Court hold court exclusively in the county seat?
You have also stated the question as: "Does Act 1727 now prohibit the holding of Court in locations outside the county seat?"
You have provided the following backdrop for your question:
 Marion County has only one district court created by Ordinance 14 passed by Marion County Quorum Court on March 10, 1977. The Agreement was signed by the participating cities. The City of Summit has subsequently withdrawn from the Agreement. However, the City of Yellville and the City of Flippin are still fully participating in the Agreement. Administratively, the Court has designated the cities of Yellville and Flippin as divisions of the District Court.
 The District Court is held every Monday and several Fridays in Yellville, the county seat. As authorized by 16-17-101 (e) of the Arkansas statutes, Court is also held once a month in Flippin.
RESPONSE
It is my opinion that the Marion County District Court may be held outside of Yellville, pursuant to the Agreement, until January 1, 2005, at which time the Agreement will likely be ineffective, following the repeal of A.C.A. § 16-17-101 by Act 1185 of 2003. While Act 1727 may be interpreted to require that the Marion County District Court be held exclusively in the county seat of Yellville after January 1, 2005, this is not entirely clear from the language. This matter could benefit from legislative or judicial clarification.
The "Agreement" that you have referenced is entitled "Agreement Establishing a Municipal Court of Marion County, Arkansas." It was entered in 1977 by Marion County and the cities of Yellville, Flippin and Summit. According to the Agreement, and the Ordinance which you have also provided (Marion County Ordinance #14 (March 10, 1977)), the "Municipal Court of Marion County, Arkansas" was created "pursuant to Act 1085 of 1975" by agreement of the participating cities. See Ordinance, supra.Act 1085 of 1975 (Extended Sess. 1976) is codified at A.C.A. § 16-17-101
(Repl. 1999). Subsection (e) of § 16-17-101, which you have referenced as authority for holding court once a month in Flippin, states:
 The municipal court of all of the agreeing municipalities may be held in one (1) location or may be held in each of the agreeing municipalities as may be agreed upon by the municipalities involved.
I assume from your reference to this provision that the cities have agreed for the Court to be held in Flippin.
Although it appears from the foregoing that the Agreement and A.C.A. §16-17-101(e) provide authority for this arrangement, the requirements ofAct 1727 of 2003 might at first glance call this into question. As noted above, Act 1727 states that Marion County shall have "one (1) district court and one (1) district judge[,]" and that the court "shall be located in the county seat. . . ." Acts 2003, No. 1727, § 2(a) and (b). Act 1727 became effective July 16, 2003 (the effective date of legislation that did not contain an emergency clause or specified date; see generally Op. Att'y Gen. 2003-119). Act 1727 also states, in the last section, that "[d]istrict courts shall be established under this subchapter on the effective date of this act." Id. at 24. Notwithstanding these provisions, I am satisfied upon further review that the Marion County District Court Judge may, at least until January 5, 2005, continue to hold court in locations other than the county seat of Yellville. I base this conclusion first upon the Agreement, but also upon my belief, explained more fully below, that the district courts identified in Act 1727 are not yet "established" in a functional sense. Thus, while it is quite possible that Act 1727 requires the Marion County District Court to be held exclusively in the county seat of Yellville after January 1, 2005, it is my opinion that the act currently poses no impediment to other locations.
With regard, first, to the Agreement, reference must be made toAct 1185 of 2003, which made corrections to the Arkansas Code for the implementation of Amendment 80. See n. 1, supra. This act provides for the repeal of A.C.A. § 16-17-101, "[e]ffective January 1, 2005. . . ." Acts 2003, No. 1185, § 102 (emphasis added). As noted above, §16-17-101(e) authorizes the agreement in this instance for holding the Marion County District Court in Flippin. The Agreement is therefore currently effective, in my opinion, pursuant to § 16-17-101.
The Agreement is not the sole basis, however, for my conclusion that the Marion County District Court currently may be held in locations other than the county seat of Yellville. Even absent the Agreement, it would be my opinion that this would currently be permissible at the discretion of the Marion County District Court Judge. The Arkansas Supreme Court has expressed this general principle as follows:
 `Where no place for the holding of a session is prescribed by statute or otherwise, it may be held, at the discretion of the judge or judges authorized to hold it, anywhere within his or their territorial jurisdiction.'
Lee v. Watts, 243 Ark. 957, 965, 423 S.W.2d 557 (1968).
The Marion County District Court Judge has countywide jurisdiction. See
Acts 2003, No. 1185, § 207 (establishing the criminal offense jurisdiction of the various courts generally, through amendments to §16-88-101 which were effective July 16, 2003) and § 208 (amending subsection (a) of § 16-88-101, effective January 1, 2005); and Acts 2003, No. 1727, § 2(c). According to my review, there is no general statute prescribing the place for holding district court. Nor, in my view, does Act 1727 currently do so. I recognize that the act might at first blush be interpreted otherwise by having "established" district courts on its effective date. As noted above, Section 24 of Act 1727 states that "[d]istrict courts shall be established under this subchapter on the effective date of this act." The argument would be that the court created by the Agreement has now been replaced by the district court established under Act 1727; and consequently, the Marion County District Court is subject to all of Act 1727's provisions, including the requirement that the court must be located in the county seat of Yellville. This argument has some appeal regarding this particular court because the existing Marion County District Court[2] comports with Act 1727 — it is the one district court in the county, and its judge was elected countywide. See Acts 2003, No. 1727, § 2 (a).
The argument fails to withstand scrutiny, however, when attention is drawn to other district courts identified in Act 1727. For example, Section 7 of Act 1727 states that Clay County "shall have one district court with two (2) departments, one (1) department located in the county seat of each judicial district. . . ." As reflected byAct 1475 of 2003,[3] however, there are currently three district courts in Clay County (although they are served by one judge). Act 1475 recognizes "the District Courts of Corning, Piggott, and Rector. . . ." Acts2003, No. 1475, § 1 (amending A.C.A. § 16-17-108(z)(1)(A)). If indeed district courts were "established under" Act 1727 with the intent that they now operate pursuant thereto, Act 1475 would be a nullity. Rules of statutory construction require, however, that these provisions be reconciled, if possible, particularly because they were enacted during the same legislative session. See generally Sargent v. Cole,269 Ark. 121, 598 S.W.2d 749
(1980). See also Cordell v. Kent, 174 Ark. 503, 506,295 S.W. 404 (1927) (stating that "the courts . . . will exhaust all the resources of interpretation before coming to the conclusion that there is an irreconcilable repugnancy between [acts passed in the same session] and that one repeals the other.")
Resort to the title of Act 1727 is justified in the face of this ambiguity. See generally McMahan v. Board of Trustees of University ofArkansas, 255 Ark. 108, 499 S.W.2d 56 (1973). Act 1727 is entitled "An Act to Establish Judicial Districts and the Number of Judges for District Courts. . . ." The intent of Act 1727 becomes clear, in my opinion, when it is realized that the act is concerned primarily with establishing the judicial districts from which the district judges will be elected in 2004. Arkansas Constitution Amendment 80, noted above, provides that "Municipal Court Judges in office at the time this Amendment takes effect shall continue in office through December 31, 2004 . . . [.]") Ark. Const. amend. 80, § 19 (A)(3). Act 1727 thus sets the stage for the 2004 elections. Although many of the judges will continue to be elected countywide, Act 1727 establishes new district court boundaries in several counties. The district courts are "established" in the sense that they have been identified so that the judges may be elected, from the established judicial districts, before the next regular legislative session. Section 24 of Act 1727 states:
 (a) District courts shall be established under this subchapter on the effective date of this act.
 (b) The voters, at the 2004 nonpartisan judicial general election, shall elect the number of district judges established under this subchapter, to take office effective January 1, 2005.
I thus conclude that the district courts identified in Act 1727 were not "established" in a functional sense on July 16, 2003 (Act 1727's effective date, as noted above). The prescribed locations for the courts apply, in my opinion, once the judges who have been elected from the respective judicial districts take office (January 1, 2005). A legitimate question may arise at that time regarding the Marion County District Court Judge's discretion to hold court in locations other than the county seat of Yellville. It is my opinion that the Agreement establishing the "Municipal [now "District"] Court of Marion County" will likely be ineffective after January 1, 2005, following the repeal of A.C.A. §16-17-101, supra, and the election of a judge to the district court established under Act 1727. Absent the Agreement, and in light of Act 1727's requirement that the court be "located in the county seat," it would seem reasonable to conclude that court must be held exclusively in Yellville after January 1, 2005. In this regard, the court has recognized the general precept that:
 `Constitutional and valid statutory provisions designating the place for holding court or terms or sessions thereof will be accorded effect, they being mandatory and exclusive of other places; and where the place is so fixed the court cannot lawfully be held at any other place.'
Lee v. Watts, supra, 243 Ark. at 965.
This principle may be cited to support the proposition that any discretion the judge may have had to hold court anywhere within the county was removed, effective January 1, 2005, by Act 1727. The matter may not be entirely clear, however, due to other language in Act 1727 regarding "departments" of district courts. The act establishes "departments" of district courts in some counties, and defines them as "the physical location where sessions of court are held[.]" Acts2003, No. 1727, § 1(1). Obviously, this language is more explicit and may be cited to challenge the assumption that the legislature has designated the exclusive place for holding court when it states (as with regard to the district court in Marion County) that the court "shall be located in the county seat."
Legislative or judicial clarification may therefore be necessary to definitively resolve the general question whether Act 1727 requires that a countywide district court must hold court exclusively in the county seat after January 1, 2005. I believe it is clear, however, that the Marion County District Court is not currently prohibited from holding court outside the county seat of Yellville.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:EAW/cyh
[1] Amendment 80 reorganized the court system in Arkansas. It established "district courts" effective July, 2001, as part of the reorganized system. See Ark. Const. amend. 80, § 7 (a). See also
Acts 2001, No. 1693 (denominating municipal courts as district courts and municipal court judges as district judges).
[2] See A.C.A. § 16-17-108 (jjj), as amended by Act 1475 of 2003
(specifying the salary of the "Marion County district court Judge.")
[3] As indicated by n. 2, supra, this act amended A.C.A. § 16-17-108
concerning salaries of district court judges and court personnel.