BOLIN, Justice.
The Tennessee Valley Printing Company, Inc., which publishes the TimesDaily newspaper in Florence, and one of its reporters, Michelle Rupe Eubanks (hereinafter collectively referred to as “the TimesDaily”), appeal from the trial court’s judgment holding that the Health Care Authority of Lauderdale County and the City of Florence d/b/a Coffee Health Group (“the Health Care Authority”) do not have to disclose certain records requested by the TimesDaily pursuant to the Open Records Act, § 36-12-40, Ala. Code 1975.

Facts and Procedural History

The Health Care Authority was organized pursuant to the Health Care Authorities Act of 1982 (“the HCA”), codified at § 22-21-310 et seq., Ala.Code 1975. It is a public corporation that owns the Eliza Coffee Memorial Hospital in Florence and the Shoals Hospital in Muscle Shoals. In fiscal years 2008 and 2009, the Health Care Authority failed to meet the financial covenants of bonds it had issued to the public. The Health Care Authority hired a financial consultant, FTI Consulting, *1029 Inc., to study the operations and business prospects of the two hospitals owned by the Health Care Authority and to make recommendations for improvement. In June 2009, FTI delivered its report to the board of directors of the Health Care Authority. The Health Care Authority then began to search for a transaction partner that would allow it to retire the bond indebtedness and to provide additional capital for operating the two hospitals. The Health Care Authority received four bid proposals from potential partners. The Health Care Authority promised the • potential partners that their bids would be confidential. On February 15, 2010, Eu-banks requested all electronic-mail correspondence between the employees of the two hospitals, the Health Care Authority board of directors, and any elected official regarding the sale of the two hospitals. On February 23, 2010, the board of directors of the Health Care Authority met and voted 10 to 1 to accept the proposal received from RegionalCare Hospital Partners, Inc.[1] Eubanks made several oral and written requests for information, including the four proposals, the letter of intent from RegionalCare, the report issued by FTI, and any preliminary draft of any contract for the sale of the two hospitals.
On March 10, 2010, the TimesDaily filed a verified complaint for declaratory and injunctive relief against the Health Care Authority. The TimesDaily alleged that the Health Care Authority had been engaged in efforts to sell and/or to transfer the management of two hospitals subject to the Health Care Authority’s control and that, as a governmental entity, the Health Care Authority’s records regarding the proposed sale and/or transfer of public assets were subject to the Open Records Act. The TimesDaily further alleged that the ownership and management of the hospitals was a matter of public concern and that the Health Care Authority had refused to provide information regarding the proposed sale and/or transfer of management. On March 11, 2010, the TimesDaily filed a motion for a temporary restraining order, seeking to delay a proposed vote by the Florence City Council on a letter of intent from RegionalCare to purchase the publicly owned hospital properties under the Health Care Authority’s jurisdiction. That same day, the TimesDaily amended its complaint to petition for a writ of mandamus requiring the Health Care Authority to allow it to inspect and copy certain requested records regarding the proposed sale.
On March 12, 2010, the Health Care Authority filed an answer to the verified complaint, as amended, generally denying the allegations, and it filed a motion in opposition to the request for a temporary restraining order. On March 23, 2010, the trial court entered an order holding that the TimesDaily was not entitled to the requested information:
“[T]he legislature granted to Public Health Authorities, including the defendant, greater flexibility than other public entities and in exempting from the Open Meeting Act and ‘other similar law’ exempted their administrative and proprietary acts from the Open Records Act.[2] *1030 This however would not exempt government functions from the Open Records Act.
“The Court finds that the transaction in question is an administrative or proprietary act and the requested records are therefore not subject to the Open Records Act. To find otherwise would make to no avail the flexibility envisioned by the Legislature in [§] 22-21-312(3) and the exemption in [§] 22-21-316.”
The TimesDaily timely appealed. In its brief on appeal, the TimesDaily does not refer to its request for the report from FTI. The Health Care Authority recognized this omission in its brief, and, in its reply brief, the TimesDaily does not refer to its request for the FTI report. We will assume, therefore, that the TimesDaily is no longer seeking access to that report.

Discussion

The issue is whether the Health Care Authority, which was established pursuant to the HCA, has to disclose to the Times-Daily records regarding the sale of the assets of two hospitals under its control, in accordance with the Open Records Act.
Section 36-12^40, the Open Records Act, provides, in pertinent part, that “[e]very citizen has a right to inspect and take a copy of any public writing of this state, except as otherwise provided by statute.”
“The Open Records Act is remedial and should therefore be liberally construed in favor of the public. As we stated in Chambers v. Birmingham News Co., 552 So.2d 854, 856 (Ala.1989):
“ ‘It is clear from the wording of [the Open Records Act] that the legislature intended that the statute be liberally construed. In addition, we note, statutes intended for the public benefit are to be construed in favor of the public. Gant v. Warr, 286 Ala. 387, 240 So.2d 353 (1970).’ ”
Water Works & Sewer Bd. of Talladega v. Consolidated Publ’g, Inc., 892 So.2d 859, 862 (Ala.2004). “[T]he party refusing disclosure shall have the burden of proving that the writings or records sought are within an exception and warrant nondisclosure of them.” Chambers v. Birmingham News Co., 552 So.2d 854, 856-57 (Ala.1989).
The term “public writing” is not defined in the Open Records Act. However, in Stone v. Consolidated Publishing Co., 404 So.2d 678, 681 (Ala.1981), this Court stated with regard to § 36-12-40 that a “ ‘public writing’ ... is such a record as is reasonably necessary to record the business and activities required to be done or carried on by a public officer so that the status and condition of such business and activities can be known by [the] citizens.”
In creating a State Records Commission, the legislature in § 41-13-1, Ala. Code 1975, defined the term “public records”:
“As used in this article, the term ‘public records’ shall include all written, typed or printed books, papers, letters, documents and maps made or received in pursuance of law by the public officers of the state, counties, municipalities and other subdivisions of government in the transactions of public business and shall also include any record authorized to be made by any law of this state belonging or pertaining to any court of *1031 record or any other public record authorized by law or any paper, pleading, exhibit or other writing filed with, in or by any such court, office or officer.”
Although § 41-13-1 is included in Title 41, which regulates the retention and disposal, of public records, “we doubt the Legislature intended to make a distinction between a ‘public writing’ and a ‘public record.’” Stone v. Consolidated Publ’g, 404 So.2d at 680. This Court has applied the definition from Stone in several cases. See Ex parte Gill, 841 So.2d 1231, 1233-34 (Ala.2002); Birmingham News Co. v. Muse, 638 So.2d 853, 854 (Ala.1994); and Chambers v. Birmingham News Co., 552 So.2d at 856.
In the HCA, the legislature' authorized the creation of health-care authorities as public corporations in order to effectuate its intent, which it set out in § 22-21-312, Ala.Code 1975:
“The Legislature hereby finds and declares:
“(1) That publicly-owned (as distinguished from investor-owned and community-nonprofit) hospitals and other health care facilities furnish a substantial part of the indigent and reduced-rate care and other health care services furnished to residents of the state by hospitals and other health care facilities generally;
“(2) That as a result of current significant fiscal and budgetary limitations or restrictions, the state and the various counties, municipalities, and educational institutions therein are no longer able to provide, from taxes and other general fund moneys, all the revenues and funds necessary to operate such publicly-owned hospitals and other health care facilities adequately and efficiently; and
“(3) That to enable such' publicly-owned hospitals and other health care facilities to continue to operate adequately and efficiently, it is necessary that the entities and agencies operating them have significantly greater powers with respect to health care facilities than now vested in various public hospital or health-care authorities and corporations and the ability to provide a corporate structure somewhat more flexible than those now provided for in existing laws relating to the public hospital and health-care authorities.
“It is therefore the intent of the Legislature by the passage of this article to promote the public health of the people of the state (1) by authorizing the several counties, municipalities, and educational institutions in the state effectively to form public corporations whose corporate purpose shall be to acquire, own and operate health care facilities, and (2) by permitting, with the consent of the counties or municipalities (or both) authorizing their formation, existing public hospital corporations to rein-corpórate hereunder. To that end, this article invests each public corporation so organized or reincorporated hereunder with all powers that may be necessary to enable it to accomplish its corporate purposes and shall be liberally construed in conformity with said intent.”
The primary rule of rules of statutory construction is to ascertain the intent of the legislature. With that in mind, this Court has stated:
“One of the fundamental rules of statutory construction is that a court is to determine and give effect to the Legislature’s intent in enacting a statute. Norfolk S. Ry. Co. v. Johnson, 740 So.2d 392 (Ala.1999). In construing acts of the Legislature, we ascertain its intent from the language used in the statute itself, if possible, as well as from the reason and necessity for the act and the goals the Legislature sought to accomplish. *1032 McGuire Oil Co. v. Mapco, Inc., 612 So.2d 417 (Ala.1992); Advertiser Co. v. Hobbie, 474 So.2d 93 (Ala.1985). If the statute is ambiguous, then we ‘may consider conditions that might arise under the provisions of the statute and examine results that would flow from giving the language in question one particular meaning rather than another.’ Norfolk S. Ry. Co., 740 So.2d at 396.”
Bleier v. Wellington Sears Co., 757 So.2d 1163, 1168 (Ala.2000).
The open-meetings law was first enacted in 1915 and the Open Records Act first appeared in the 1923 Code of Alabama. When the HCA was adopted in 1982, the legislature expressly exempted meetings of health-care authorities from the open-meetings law. As originally enacted, § 22-21-316(c) provided: “The board shall hold regular meetings ... and must upon call of the chairman of the authority ... hold a special meeting, none of which meetings shall be subject to the provisions of section 13A-14-2 or other similar law.”[3] The legislature specifically exempted health-care authorities from the open-meetings law. Had the legislature intended to exempt health-care authorities from the Open Records Act, it could easily have done so. Both the open-meetings law and the Open Records Act were in existence when the legislature enacted the HCA. “[T]he Legislature, in enacting new legislation, is presumed to know the existing law.” Blue Cross & Blue Shield of Alabama, Inc. v. Nielsen, 714 So.2d 293, 297 (Ala.1998).
The phrase “or other similar law” in § 22-21-316(c) is used after the specific reference to the open-meetings law. We recognize that both the open-meetings law and the Open Records Act have the general goal of transparency in government and the peoples’ right to access to public information. However, we cannot infer that the legislature intended to exempt healthcare authorities from the Open Records Act by its use of the phrase “or other similar law” because, again, had the legislature wanted to exempt the records of local health-care authorities from the Open Records Act, it could have specifically done so. It appears that the phrase “or other similar law” directly references § 13A-14-2, and, in fact, the legislature in 2005 repealed § 13A-14-2 and adopted a new open-meetings law, which contains more detail and regulations on public meetings, i.e., an “other similar law.” Moreover, § 36-12-40 provides for exceptions to the Open Records Act “otherwise expressly provided by statute,”[4] and the legislature has created numerous statutory exemptions to the Open Records Act for entities whose records would “otherwise” be subject to public disclosure. See, e.g., § 12-21-3.1, Ala.Code 1975 (law-enforcement investigative reports are not public records and are protected from disclosure); § 12-21-6, Ala.Code 1975 (hospital records produced pursuant to a subpoena are confidential, other than to those who are provided access by the court order); § 22-6-9, Ala.Code 1975 (identity of Medicaid recipients); § 22-11A-2, AIa.Code 1975 (reports required by the State Board of Health regarding cases or suspected cases of notifiable diseases or health conditions are confidential, with certain exceptions); *1033 and § 22-11A-14, Ala.Code 1975 (reports required of physicians diagnosing or treating sexually transmitted diseases are confidential, with certain exceptions). Had the legislature intended to exempt the records of health-care authorities from public disclosure, it could have made those records confidential as it has done on numerous occasions.
Additionally, the legislature requires that health-care authorities established under the HCA keep records of closed meetings and that those records are prima facie evidence of the matters of the health-care authority. In § 22 — 21—316(c), after exempting health-care authorities from the open-meetings law, the legislature went on to provide:
“Any matter on which the board is authorized to act may be acted upon at any regular, special or called meeting. At the request of any director, the vote on any question before the board shall be taken by yeas and nays and entered upon the record. All resolutions adopted by the board shall constitute actions of the authority, and all proceedings of the board shall be reduced to writing and signed by the secretary of the authority and shall be recorded in a well-bound book. Copies of such proceedings, when certified by the secretary of the authority, under the seal of the authority, shall be received in all courts as prima facie evidence of the matters and things therein certified.”
Under the HCA, health-care authorities are exempt from certain laws applicable to governmental entities. Health-care-authority board members, officers, and employees are exempt from the Ethics Act. § 22-21-334, Ala.Code 1975. Health-care authorities do not have to comply with competitive-bid laws. § 22-21-335, Ala. Code 1975. The legislature provided for these express exemptions along with the express exemption from the open-meetings law. However, the HCA makes no reference to the Open Records Act.
Because the HCA does not prevent disclosure of the requested records, we now turn to our caselaw regarding the Open Records Act. In Stone, 404 So.2d at 681, we defined a “public writing” as “such a record as is reasonably necessary to record the business and activities required to be done or carried on by a public officer so that the status and condition of such business and activities can be known by [the] citizens.” In Water Works & Sewer Board v. Consolidated Publishing, supra, it was necessary to define “public officer”:
“The term ‘public officer’ is defined in the Alabama Code, not coincidentally, in the same title and chapter as the Open Records Act. We choose to employ this definition of ‘public officer or servant’ in our application of the Stone definition of ‘public writing.’ Section 36-12-1, Ala. Code 1975, reads:
“ ‘A public officer or servant, as used in this article, is intended to and shall include, in addition to the ordinary public offices, departments, commissions, bureaus and boards of the state and the public officers and servants of counties and municipalities, all persons whatsoever occupying positions in state institutions.’ ”
Consolidated Publ’g, 892 So.2d at 863. In Consolidated Publishing, this Court held that because the water works and sewer board, a public corporation, had the qualities of an agency of the City, for the purposes of the Open Records Act its employees are “public officers” of the City and are subject to the Open Records Act. Consolidated Publishing sued the water works board and its records custodian to force the water works board to allow it access to certain of the board’s records pursuant to the Open Records Act. The *1034 water works board argued that because it was a public corporation, it was not subject to the Open Records Act. The trial court held that the water works board was subject to the Open Records Act but that some of the records Consolidated Publishing sought were excluded from public disclosure. The water works board appealed from the holding that it was subject to the Open Records Act, and Consolidated Publishing appealed from the holding that certain records it sought were shielded from public disclosure.
This Court noted in Consolidated Publishing that the Open Records Act should be construed in favor of the public because the legislature intended such a construction and the Open Records Act was intended for the public benefit. The Open Records Act provides that “[e]very citizen has a right to inspect and take a copy of any public writing of this state, except as otherwise expressly provided by statute.” The Court, using the definition from Stone, stated that a public writing is a record reasonably necessary to record the business and activities required of a public officer. Therefore, if the employees of the water works board were public officers, then their records would be subject to the Open Records Act. We noted that the water works board provides the residents of the City with water and sewer service, a municipal function. We held that because a water works board performs a municipal function, it is an agency of the municipality it serves. Therefore, the employees of the water works board were public officers and its records were subject to the Open Records Act.
In the present case, we conclude that the Health Care Authority is a local governmental entity. We find support for this in the HCA itself, which provides that a health-care authority is designated as an instrumentality of its authorizing subdivision. § 22-21-318(c)(2). Here, that would be Lauderdale County and the City of Florence. Eight of the 11 members of the board of the Health Care Authority are either members as a result of their elected position or appointed by the City and the County in accordance with § 22-21-316(a). Unlike a private entity, the Health Care Authority has the power of eminent domain, to take private property for public use. § 22-21-319. Public health-care authorities are exempt from usury laws, interest laws, § 22-21-328, Ala.Code 1975, and from paying property or income taxes. § 22-21-333, Ala.Code 1975. The income from securities issued by a health-care authority is not taxable. § 22-21-333. Health-care authorities can also be designated as the recipient of proceeds from public-hospital taxes. § 22-21-338, Ala. Code 1975. It is important to note that while health-care authorities have the power to purchase property, they are prohibited from selling “substantially all [their] assets” “without the prior approval of the governing body of each authorizing subdivision.” § 22 — 21—318(a)(7), Ala.Code 1975.
Also, the attorney general addressed this question in an advisory opinion, which we find supportive of our conclusion that the Health Care Authority is a governmental entity. See Ala. Atty. Gen. Op. 2008-004 (Oct. 2, 2007). In 2007, the Henry County Health Care Authority, Inc., asked the attorney general for an advisory opinion as to whether it had to disclose to the public the annual salaries of top-level-management executives who were hired without advertisement by the health-care authority and its subsidiaries, based upon the degrees and professional experience those professionals possessed. The health-care authority was established pursuant to the HCA, and it owned a hospital and two assisted-living facilities. The health-care authority was composed of nine members, five of whom were appointed by the county *1035 commission and four of whom were selected by the health-care authority. The health-care authority received a portion of the county’s ad valorem tax revenues. The health-care authority argued that disclosure of the executives’ salaries to the public would compromise its ability to remain competitive in recruiting top-level management and in hiring, as well as retaining, such employees whose salaries would be disclosed. The health-care authority argued that it was neither fully private nor fully governmental in nature and not subject to the Open Records Act. The attorney general opined that the health-care authority was a public corporation and that pursuant to § 22-21-318(c)(2), the health-care authority was designated as an instrumentality of its authorizing subdivisions. The attorney general further noted that a majority of the board of directors was appointed or elected by the governing body in accordance with § 22-21-816(a). The attorney general also opined that in accordance with the Open Records Act and the holding in Water Works & Sewer Board v. Consolidated Publishing, supra, the business records of the health-care authority were public records and the salaries paid to top-level-management executives employed by the health-care authority were a matter of public record. The attorney general also referred to two earlier attorney general opinions that held that the contracts of coaches at a state university are public records and that salary, race, and sex were among the information that must be disclosed, and an opinion that determined that information concerning the names, titles, and compensation of county employees is a matter of public record to be made available to the public.
We also find support for our conclusion in two federal eases addressing this issue. In Todorov v. DCH Healthcare Authority, 921 F.2d 1438, 1461 (11th Cir.1991), the court, in addressing the HCA, held: “It is apparent from [the HCA] that the Alabama Legislature made any hospital organized pursuant to the [HCA] a local government entity, labeling such a hospital a ‘political subdivision of the state.’ ” In Askew v. DCH Healthcare Authority, 995 F.2d 1033 (11th Cir.1993), the plaintiffs brought an antitrust action against a health-care authority to prevent the authority from effectuating its proposed acquisition of a private health-care facility. The federal district court denied the health-care authority’s motion for a summary judgment, ultimately entered a judgment for the plaintiffs, and the authority appealed. The United States Court of Appeals for the Eleventh Circuit reversed the judgment in favor of the plaintiffs, holding that the health-care authority qualified as a “political subdivision of the state” for purposes of antitrust immunity and that, therefore, it was authorized by the state to acquire the private health-care facility. 995 F.2d at 1037.
We now turn to whether the requested documents are exempt under the exceptions set out in Stone. In Stone, we stated:
“This is not to say, however, that any time a public official keeps a record, though not required by law, it falls within the purview of s 36-12-40. McMahan v. Trustees of the University of Arkansas, 255 Ark. 108, 499 S.W.2d 56 (1973). It would be helpful for the legislative department to provide the limitations by statute as some states have done. Absent legislative action, however, the judiciary must apply the rule of reason. State v. Alarid, 90 N.M. 790, 568 P.2d 1236 (1977). [1] Recorded information received by a public officer in confidence, [2] sensitive personnel records, [3] pending criminal investigations, and [4] records the disclosure of which *1036 would be detrimental to the best interests of the public are some of the areas which may not be subject to public disclosure. Courts must balance the interest of the citizens in knowing what their public officers are doing in the discharge of public duties against the interest of the general public in having the business of government carried on efficiently and without undue interference. MacEwan v. Holm, 226 Or. 27, 359 P.2d 413 (1961).”
404 So.2d at 681.
In Water Works & Sewer Board v. Consolidated Publishing, this Court declined to abandon the balancing test adopted in Stone absent legislative action. The balancing test requires that the interest of the citizens in monitoring public officers be balanced against the interest of the general public in “having the business of government carried on efficiently and without undue influence.” 404 So.2d at 681.
“However, it must be noted that this ‘rule of reason’ shall not be applied so as to hamper the liberal construction of § 36-12-40. The exceptions set forth in Stone must be strictly construed and must be applied only in those cases where it is readily apparent that disclosure will result in undue harm or embarrassment to an individual, or where the public interest will clearly be adversely affected, when weighed against the public policy considerations suggesting disclosure. These questions, of course, are factual in nature and are for the trial judge to resolve.”
Chambers, 552 So.2d at 856.
The two exceptions applicable here are: 1) recorded information received by a public officer in confidence and 2) records the disclosure of which would be detrimental to the best interest of the public. We recognize that the Health Care Authority assured the four bidders that their bids for purchasing the assets of the Health Care Authority would be confidential.
In Birmingham News Co. v. Muse, 638 So.2d 853 (Ala.1994), the issue was whether Auburn University’s response to an inquiry from the National Collegiate Athletic Association (“NCAA”) was a public writing subject to inspection and copying pursuant to the exceptions set out in Stone as information received by a public officer in confidence. The record in Muse established that NCAA investigations are conducted without subpoena power, which may require promises of confidentiality to obtain recorded statements from witnesses who are often minors and student athletes. The Court noted that Auburn University, as a member of the NCAA, was functioning as a member of a voluntary, self-policing institution and that there is no state law requiring Auburn University to respond to NCAA inquiries or investigations. Although Auburn University is a state institution, its response did not necessarily become a public record subject to disclosure simply because of that fact. Accordingly, there was no showing that Auburn University’s response was a public record as a matter of law. This Court went on to apply Stone’s “rule of reason” in determining whether Auburn University’s response and supporting documents were public records subject to disclosure and that the confidentiality inherent in the investigation should be honored unless overcome by a compelling state interest. Muse, 638 So.2d at 857. Because the trial court had not viewed the documents in question, the Court remanded the case for an in camera review and a determination as to whether each document was subject to public disclosure.
In the present case, unlike Muse, there was no evidence indicating that the potential bids or the letter of intent to purchase a publicly owned hospital re *1037 quired confidentiality. The Health Care Authority contends that if bidders are not protected by confidentiality, they might not submit a bid because sensitive corporate information would be released to other corporations. A general suggestion by a governmental entity that disclosure would likely result in competitive harm to the person submitting the information is not sufficient. See Burke Energy Corp. v. Department of Energy, 583 F.Supp. 507, 511 (D.C.Kan.1984) (“[T]o support a finding of confidential information, there must be independent evidence to support it, such as evidence that disclosure will likely result in harm to the person’s competitive position; a blanket allegation of harm does not alone constitute sufficient evidence.”); Black Hills Alliance v. United States Forest Serv., 603 F.Supp. 117 (D.C.S.D.1984) (requirement that affiants are competent to testify whether disclosure would likely result in substantial competitive harm to the person submitting the information was questioned where affiants are representatives of the agency possessing the information rather than the corporation that submitted it). This case is also distinguishable from Muse in that public approval of the sale of the assets of the Health Care Authority is required by state law. Additionally, no informants or minors are involved in this case.
“[E]ntities doing business with government agencies and submitting records to them in connection therewith should be aware that regardless of agency promises that documents will be kept confidential, public record suits can nevertheless be successful. Thus, it is not safe to assume confidentiality agreements with government agencies will be legally enforceable.” Theresa M. Costonis, What Constitutes Commercial or Financial Information, Exempt from Disclosure Under State Freedom of Information Acts, 5 A.L.R. 6th 327 § 3 (2005) (footnotes omitted).
“ ‘[A] private party cannot render public records exempt from disclosure merely by designating information it furnishes a governmental agency confidential.’ [Sepro Corp. v. Florida Dep’t of Envtl. Prot., 839 So.2d 781, 784 (Fla.Dist.Ct.App.2003) ]. The right to examine these records is a right belonging to the public; it cannot be bargained away by a representative of the government.”
National Collegiate Athletic Ass’n v. Associated Press, 18 So.3d 1201, 1208-09 (Fla.Dist.Ct.App.2009). In San Gabriel Tribune v. Superior Court, 143 Cal.App.3d 762, 192 Cal.Rptr. 415 (Cal.Ct.App.1983), a newspaper sought disclosure of financial statements prepared in connection with a municipality’s exclusive long-term waste-disposal contract with a garbage company. The California court concluded that the garbage company waived any privacy interests it may have had by voluntarily injecting itself into the public arena by seeking a rate increase and submitting financial data in support of the increase.
The other applicable exception from Stone that may prevent disclosure of the requested documents is whether the records sought are records the disclosure of which would be detrimental to the best interest of the public. In Chambers, supra, a newspaper requested applications, resumés, and other related materials regarding the position of coordinator of water and sewer services for the county. The county commission and county personnel department refused the newspaper’s request on the grounds that the documents were recorded information received by a public officer in confidence, that they were sensitive personnel records, and that they were records the disclosure of which would be detrimental to the best interest of the public. The trial court ordered that the documents be disclosed, noting that none of the documents contained a request to be *1038 kept confidential and that no promise of confidentiality was made, that the documents were public writings necessary to carry out the business of a public officer, and that none of the documents contained any sensitive material that would require an exception to disclose. This Court affirmed the judgment of the trial court, stating:
“Doubtless, exceptions to the broad language of § 36-12-40 are needed and should be applied under appropriate circumstances. But, we emphasize that these exceptions must be narrowly construed and their application limited to the circumstances stated herein, for it is the general rule, and has been the policy of this state for a number of years, to advocate open government. The Stone exceptions were not intended, nor shall they be used, as an avenue for public officials to pick and choose what they believe the public should be made aware of.”
552 So.2d at 857.
In the present case, the Health Care Authority states in its brief:
“[The Health Care Authority’s] interest is not rooted in preventing disclosure of confidential information to the media or concerned citizens. Instead, the threat lies with the harm that will occur if sensitive, confidential information is disclosed to them competitors. Instead of viewing this as an attempt by [the Health Care Authority] to withhold secret information, [TimesDaily’s] Brief at 15-17, [TimesDaily] and this Court should view [the Health Care Authority’s] actions for what they truly are: an effort to balance the public’s need to receive information with the need to maintain confidentiality in business transactions for the benefit of [the Health Care Authority’s] patients, employees, doctors and the surrounding community.
“[The Health Care Authority] recognizes [its] responsibility to be as forthcoming with the public as possible, which is why [it] released material terms of the transaction. This does not mean, however, that the need to provide information to the public always supercedes the need to prevent the release of sensitive information to competitors. Instead, some sensitive terms must be protected from disclosure for the sake of the hospitals’] ability to survive in the health care market. It is therefore in the public’s best interest for this Court to recognize the unique nature of health care authorities, and protect the records regarding the sale of [the Health Care Authority’s] assets from disclosure.”
The Health Care Authority fails to explain how the release of the proposals of the four bidders, the letter of intent from the winning bidder, and electronic mail from hospital employees and board members regarding the sale would be a detriment to the sale of the Health Care Authority’s assets. At this point, the four bidders have presented them proposals. There is no danger of one bidder seeing another bidder’s proposal before presenting a bid to the Health Care Authority. The Health Care Authority, with one dissent, voted to accept the winning bidder’s letter of intent to purchase. When the trial court issued its order, it appears that the city council and county commission had voted on the letter of intent. The Health Care Authority’s argument that competitive harm will befall the hospitals if those documents are now disclosed or that the disclosure will affect the hospitals’ ability to survive in the health-care market is unpersuasive because the requested documents relate to the sale of the assets of the hospitals. The sale of the assets of the *1039 public hospitals eliminates their need to remain competitive with private hospitals.

Conclusion

The Health Care Authority’s assets were accumulated through the use of statutorily authorized governmental powers, including eminent domain and the issuance of tax-free bonds, and had the enabling act for the Health Care Authority so provided, taxation would have been an available source of revenue. The public should be allowed to scrutinize the sale of those assets. We agree with the Health Care Authority that documents relating to the day-to-day operations of the hospitals would likely not be subject to public disclosure. Documents relating to patients, physicians, and employees of the hospitals are protected from disclosure under numerous state and federal laws. Additionally, the HCA protects public health-care authorities from the competitive-bid process, which prevents certain disclosures and promotes competition with private hospitals. However, we are limited to the facts before us, and the documents requested here relate only to the final sale of those assets. Pursuant to § 22-21-339, Ala.Code 1975, when a health-care authority has no outstanding securities and when no other obligations assumed by the authority are outstanding, the board of directors may declare the authority dissolved. The sale of assets of a public hospital and possibly the ultimate disposition of that hospital, which provides care to the citizens in the community, should be a matter open for public discourse. This follows the legislature’s requirement that elected officials of the health-care authority’s authorizing subdivisions (here the City Council of Florence and the Lauderdale County Commission) vote on the sale of those public assets.
“Citizens are entitled to information regarding the affairs of their government. Alabama’s Open Records Act first appeared in the 1923 Code of Alabama and represents a long history of openness. The Open Records Act is remedial and should therefore be construed in favor of the public. The statutory and judicially created exceptions generally protect an individual’s privacy, the integrity of a criminal investigation, public safety and security, or privileged information. The exceptions to the Open Records Act should be strictly construed, because the purpose of the Open Records Act is to permit the examination of public writings and records.”
Allen v. Barksdale, 32 So.3d 1264, 1274 (Ala.2009).
Accordingly, we reverse the judgment of the trial court and remand the case for further proceedings. As stated above, the sale of the assets of the Health Care Authority, a public corporation, is subject to the Open Records Act. This Court has not reviewed the requested documents submitted under seal, and we remand this cause for the trial court to again review the requested documents to ascertain whether any statutory exemptions or other exemptions provided by law are applicable, consistent with this opinion.
REVERSED AND REMANDED.
COBB, C.J., and LYONS, WOODALL, STUART, SMITH, PARKER, and SHAW, JJ., concur.
MURDOCK, J., concurs specially in part and dissents in part.

. The Health Care Authority board of directors has 11 members: the chairman of the Lauderdale County Commission, the mayor of the City of Florence, 6 residents of the county and city appointed by the county commission (3) and the city council (3), and 3 physicians appointed by the staff of the hospitals owned by the Health Care Authority.

. In supporting its conclusion that the Health Care Authority was acting in the nature of a private business, the trial court used the phrase "administrative and proprietary” regarding the records created by a health-care authority. It appears that the trial court is referring to the difference between governmental functions and the functions of private *1030 business. See City of Selma v. Dallas County, 964 So.2d 12 (Ala.2007) (holding that a governmental function is not proprietary in nature but is performed under the police power to promote the health and well being of the people). Nothing indicates that a "trade secret” or other proprietary information is included in the requested documents.

. Effective October 1, 2005, § 13A-14-2 was repealed. See Act No. 2005-40, Ala. Acts 2005. The reference in § 22-21-316(c) has been changed to "Chapter 25A, Title 3ó.”

. Section 36-12-40 contains a specific exemption for "registration and circulation records and information concerning the use of the public, public school or college and university libraries of this state.” After the terrorist attacks of September 11, 2001, § 36-12-40 was amended to add an exemption for certain homeland-security information.